**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CFL TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY and GE LIGHTING, LLC, <br><br> Defendants. | C.A. No. 18-1444-RGA |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS
FROM JOHN C. PHILLIPS, JR.**

Dated: January 23, 2020

                        John C. Phillips, Jr. (No. 110)
                        Megan C. Haney (No. 5016)
                        PHILLIPS, GOLDMAN, MCLAUGHLIN &
                        HALL, P.A.
                        1200 North Broom Street
                        Wilmington, Delaware 19806
                        Telephone: (302) 655-4200
                        jcp@pgmhlaw.com
                        mch@pgmhlaw.com

                        *Attorneys for Plaintiff*

Dear Judge Andrews:

Plaintiff CFL Technologies, LLC ("CFLT") respectfully seeks an Order (draft attached) compelling Defendants General Electric Company and GE Lighting, LLC ("GE") to produce core technical documents under Paragraph 4(b) of the Default Standard for Discovery. GE has so far produced only two pages of core technical documents. (GE_CFLT_000859-860, a schematic and component list for one accused product). More is required under the Default Standard for Discovery and the law of this District. GE's failure to adequately produce core technical documents has required CFLT to meet infringement contention deadlines in the absence of any real discovery from GE—an unfair and unneeded hindrance to trial preparation. GE's position also foreshadows an intent to continue to withhold meaningful discovery on the scope of its infringement liability, *e.g.*, financial discovery for most models. The law does not allow GE to evade its obligations to produce relevant and targeted accused product discovery, nor act as if the case only concerns a single model when it involves a class of products.

In the Complaint filed on September 17, 2018, CFLT asserted that it expected that every GE compact fluorescent lamp ("CFL") sold during the damages period infringed at least one claim of the patents-in-suit. (Dkt. No. 1, at ¶¶ 20-21). Accordingly, both the Complaint and CFLT's Paragraph 4(a) disclosures named an exemplar GE Sample CFL by model number, and expressed an intent to use discovery to acquire evidence of the rest. CFLT also identified the easily-perceived structural characteristics that it believed all infringing products shared that reflected infringement, and that do not simply mirror claim language. (Ex. A, naming compact structure, base terminals receiving household power, a rectifier and half-bridge inverter, an L-C circuit, *etc.*). CFLT supplemented its Paragraph 4(a) disclosures on November 25, 2019, naming seven additional specific models acquired on the open market. After tear down and testing, CFTL then provided detailed infringement contentions and claim charts on December 30, 2019 for all eight CFL models, confirming the common structural characteristics that are likely found in all damages-period bulbs that evidence their infringing nature. (Ex. B).

GE sold hundreds of likely-infringing CFL model designations during the damages period. (See Proposed Order Attachment). CFLT is entitled to take discovery of those models to confirm infringement and gather trial-proofs. The damages period lasted six months, ending before suit (September 17, 2012 to April 23, 2013). CFLT acquired numerous bulbs, and performed teardowns and testing to confirm infringement. But it was manifestly not possible to acquire all candidate models. Many are no longer marketed. Nor should CFLT have the burden in the first place to tear down hundreds of distinct models to open the door to obtaining product discovery. As considered below, federal court discovery procedures have always been available to a patent plaintiff for completing its accused product discovery, and for confirming the scope of infringement. This should especially be true in a case where everything torn down and tested so far does infringe.

Since the 1950's, this Court has allowed discovery to patent plaintiffs beyond just the accused product models specifically named in a complaint. *Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, 426 (D. Del. 1959) ("It is obvious that the plaintiff is entitled to know which products the defendant or its licensees manufacture which may infringe."). The general rule is to permit accused product discovery. *Tessera, Inc. v. Sony Elecs., Inc.,* No. 10-0838-RMB-KMW, 2012 U.S. Dist. LEXIS 180771, at *11 (D. Del. Aug. 8, 2012) ("[T]he inherent

The Honorable Richard G. Andrews                                                                                                       Page 2
January 23, 2020

purpose of discovery would be stymied by limiting all discovery requests to the infringement known by the patent holder during the early stages of litigation."); *Rohm and Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117, at *20 (D. Del. Sep. 14, 1990) ("[A] defendant cannot simply claim non[-]infringement and limit discovery according to its view of the case.").

That said, to protect defendants from unjustified fishing expeditions, this Court has announced a framework. Discovery on unnamed model designations is considered "more likely to be seen as relevant" when "the requesting party can articulate, in a focused, particularized manner, the characteristics or components that the unaccused product must have in order to ***suggest*** that they ***may infringe*** the patents-in-suit . . . ." *Invensas Corp v. Rensas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012) (emphasis added). This is sometimes described as a "reasonably similar" test, and contrasts with plaintiffs who (unlike here) merely make "a broader, more generalized argument" about similarity. *Id.*

Courts also take into account the factors under Rule 26(b)(2)(C)—(1) whether the requesting party could reasonably have obtained the information prior to the litigation, and (2) the relative nature of the burden on the defendant in identifying and producing the requested discovery. *Id.* at 280. Thus when the burden on the plaintiff to have investigated all model designations would have been "Herculean," and a defendant is "familiar with the universe of those products," courts will grant accused product discovery. *Id.* at 282 n.9, quoting *Phillip M. Adams & Assocs., LLC v. Dell, Inc. et al.*, No. 1:05-CV-64, 2008 U.S. Dist. LEXIS 4485, at *11 (D. Utah Jan. 22, 2008).

Here, all it takes for GE to comply with its Paragraph 4(b) obligations is to produce the same two pages for all models that it produced for the GE Sample CFL (*i.e.*, pages like GE_CFLT_000859-860). In the context of high-stakes patent litigation, two pages per model amounts to a negligible burden on the producing party. Indeed, these two pages are both a bill of materials and a schematic—a reasonably good starting point for a technical expert to perform a computer circuit simulation, thus obviating a need to do any physical testing like that CFLT already did, or otherwise group infringements by categorizing subsets with essentially identical circuits.

Under these factors, CFLT proposed the workable definition to guide accused product discovery. CFLT's definition captures products "reasonably similar" to the named model. *Invensas Corp.*, 287 F.R.D. at 285. CFLT has meaningfully identified the component, characteristic, or element of the product or system that it believes correlates with the product infringing. *Id.* CFLT has thus sufficiently stated how named model designations "operate in a manner consistent with the infringement theory in [preliminary infringement contentions]," such that a court may assume that all such products meeting the relevant characteristic definition operate in a manner reasonably similar to that infringement theory, at least for discovery purposes. *Id.* n.13; *accord Sprint Communs. Co., L.P. v. Comcast Cable Communs., LLC*, No. 11-2684-JWL, 2015 U.S. Dist. LEXIS 180007, at *25 (D. Kan. May 12, 2015) (noting rule permitting discovery on unaccused models that are "reasonably similar" to those specifically named); *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 33 (D.D.C. 2012) (same); *Honeywell Int'l, Inc. v. Acer Amer. Corp.*, 655 F. Supp. 2d 650, 656 (E.D. Tex. 2009) (same). "Discovery in patent litigation must necessarily identify the products ***potentially*** at issue before the products ***actually*** at issue are identified. The patent holder is not in a position to know the extent of the alleged infringer's activities but ***requires discovery***

The Honorable Richard G. Andrews	Page 3
January 23, 2020

from the alleged infringer ***to discover the potential extent of infringement***." *Phillip M. Adams & Assocs., LLC*, 2008 U.S. Dist. LEXIS 4485, at *11 (emphasis added).

      Here, CFLT is not in a reasonable position to confirm the entire scope of GE's infringement. CFLT has identified, in detail, the basis for its infringement allegations. Both the law and equity require full disclosure respecting all of GE's CFLs.

      GE has tried to justify its conduct with citation to *Honeywell Int'l Inc. v. Audiovox Communs. Corp*., C.A. No. 04-1337-KAJ, 2005 U.S. Dist. LEXIS 41822, 2005 WL 3988905 (D. Del. Oct. 7, 2005)—a decision rendered before the default discovery standards were adopted by the Delaware District Court in 2011. But the 2012 *Invensas* decision states that *Honeywell* does not "stand for the bright-line line proposition that, in all cases, 'a plaintiff cannot take discovery on products it has not accused of infringement.'" *Invensas*, 287 F.R.D. at 281. In any event, the *Honeywell* court permitted "discovery into certain LCD modules that plaintiffs had not been able to specifically identify by make or model number . . . ." *Invensas*, 287 F.R.D. at 282 n.8.

      GE has also implied that it spun out its lighting business, suggesting it no longer has employees who can investigate its CFL portfolio for CFLT's named structural characteristics. This is a makeweight argument for at least four reasons: (1) GE has made no effort to produce core technical documents for seven of the eight Paragraph 4(a)-named models, thus showing it simply does not want to; (2) it is beyond implausible that GE currently lacks a technical employee who can look at a schematic to determine whether (*e.g.*) a half bridge inverter or a rectifier exists in the circuit; (3) GE freely produced the right documents for *one* product, raising the obvious question, "why not the rest?"; and (4) GE can sidestep this investigation-burden entirely by producing core technical documents for *all* of its CFLs from the damages period (again, a trivial two pages per model), whereupon CFL will undertake to investigate and confirm the list of infringing models.

      GE may also propose a "representative product" framework if it believes discovery burdens are too high. But as things stand, GE has attempted to construct a Catch-22 for CFLT, by refusing to let any product qualify as "representative," while also refusing to allow specific discovery into model designations that are off-market or otherwise requiring Herculean efforts to obtain. The burden of purchasing and reverse-engineering all of GE's damages-period CFLs greatly outweighs the burden of GE producing electrical schematics and bills of materials on a per model basis.

      For the foregoing reasons, and other reasons that might arise at the hearing, CFLT respectfully requests that the Court enter the draft Order accompanying this letter-brief, compelling GE to complete its Paragraph 4(b) core technical document production.

                              Respectfully submitted,

                              */s/ John C. Phillips, Jr.*

                              John C. Phillips, Jr. (No. 110)

cc:     All counsel of record (via CM/ECF & email)