# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CFL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and GE LIGHTING, LLC,<br><br>      Defendants. | C.A. No. 18-1444-RGA<br><br>**JURY TRIAL DEMANDED** |

## LETTER DATED JANUARY 27, 2020 FROM
## DANIEL M. SILVER, ESQ. TO THE HONORABLE RICHARD G. ANDREWS
## IN RESPONSE TO D.I. 46

DATED: January 27, 2020

*Of Counsel:*

Stephen J. Akerley
Philip C. Ducker
Adrian Kwan
**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.**
44 Montgomery St #36
San Francisco, CA 94104
(415) 432-6000
SJAkerley@mintz.com
PCDucker@mintz.com
AKwan@mintz.com

**McCARTER & ENGLISH, LLP**
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King St., 8th Floor
Wilmington, DE  19801
(302) 984-6331
mkelly@mccarter.com
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Defendants General Electric
Company and GE Lighting, LLC*

## I.     INTRODUCTION AND RELEVANT BACKGROUND

In 2006, U.S. Patent Nos. 5,510,681 and 5,510,680 (collectively, the "Asserted Patents") were first asserted against General Electric Co. ("GE") by the inventor of the patents, Mr. Nilssen. D.I. 1 at ¶ 22.  While that case was pending, the Asserted Patents were found unenforceable due to Nilssen's inequitable conduct. *Id*. at ¶¶ 23-24. That finding was affirmed on appeal by the Federal Circuit which resulted in a dismissal with prejudice and Nilssen's lawyer stating that, "[w]ith the holdings on appeal in the Osram case, those patents are no longer going to be asserted." *Id*. at ¶¶ 23-24, *Nilssen et al v. General Electric Co.*, Case No. 1:06-cv-04155, D.I. 118, at 12:13-14 (N.D. Il. Jan. 31, 2017) (docket entry for July 18, 2008 hearing transcript) (attached as Ex. 1).

Ten years of silence followed the dismissal, during which time GE withdrew from the Compact Fluorescent Light ("CFL") market. Then, on September 17, 2018, Plaintiff CFL Technologies ("CFLT"), a newly formed non-practicing entity sued GE alleging infringement of the Asserted Patents. *See* D.I. 1. In suing GE, CFLT has ignored the dismissal with prejudice and inventor's acknowledgement that the Asserted Patents would no longer be asserted. CFLT contends the Asserted Patents were somehow automatically resurrected in 2011, seven years before the filing of the complaint, following the Federal Circuit's decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) that changed the law of inequitable conduct. D.I. 1 at ¶ 33.

CFLT has never explained why it or prior owners of the Asserted Patents waited seven years after *Therasense* to file this case even though it admits it (and all prior owners) were aware of *Therasense* the entire time. CFLT argues that its delay means that GE should bear the burden to produce documents on numerous products CFLT cannot, in good faith, identify as accused. In CFLT's view, GE should bear the burden to identify hundreds of products because "[m]any are no longer marketed." Thus, CFLT seeks to use its delay to shift its discovery burdens to GE, effectively forcing GE to perform an infringement analysis on its own discontinued products. Effectively, CFLT is asking the Court to absolve it of its discovery obligations because of the seven year delay and despite the fact that GE spent all that time understanding that this dispute had been resolved. There is no legal basis for the requested burden shifting, particularly where the potentially infringing products were publicly available and could have easily been obtained and inspected before GE exited the CFL business.

## II.    ARGUMENT

CFLT argues that GE should have to analyze hundreds of long-discontinued CFL products to determine if they might support CFLT's infringement theory. It is enough, according to CFLT, that it: (1) analyzed eight GE CFLs (two of which were not available within any relevant time period) and concluded they infringe; (2) believes, without explanation, that every other GE CFL infringes the Asserted Patents; and (3) contends the burden to identify all of the remaining relevant products would be a herculean task. Finding no supporting authority, CFLT relies on irrelevant, out-of-district cases and mischaracterizations of cases from this District.

Delaware's Default Standard for Discovery requires that, "[w]ithin 30 days after the Rule 16 Conference and for each defendant, the plaintiff shall specifically identify the accused products and the asserted patent(s) they allegedly infringe."  Del. Default Std. for Disc. ¶ 4(a).  Courts in

1

this District have interpreted "specifically identify" to require a plaintiff to, in the first instance, identify specific models of products that allegedly infringe. *See Honeywell Int'l, Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337, D.I. 133 at 27-28; 2005 WL 3988905 at *1 (D. Del. Oct. 7, 2005) (ordering defendants to respond to discovery requests only for "products and product lines which have been identified by [plaintiff] with specificity (e.g., by make and model number)"). Under ¶ 4(a), a plaintiff may not identify a few accused products and request discovery on all other products or product lines sold by a defendant.

CFLT's initial ¶ 4(a) disclosure identified only *one* accused product. Using a list of vague characteristics set forth in the Complaint, CFLT attempted to accuse "a class of products having relevant characteristics that are the same as, or similar to, those possessed by" the sole GE product. Ex. 2, CFLT's Initial Disclosures, at p. 4. After GE noted CFLT's failure to comply with the Default Standard, CFLT identified seven additional products it found on the internet and doubled-down on its demand that GE identify all products meeting CFLT's vague, overly broad and shifting list of "characteristics". Ex. 3, CFLT's First Suppl. Paragraph 4(a) Disclosures. It then demanded GE produce core technical documents for each of those products. In doing so, CFLT is simply trying to avoid the burden all plaintiffs face. It cannot use the delay - a fact of its own making - to offload that burden to GE.

The Court uses a three-part test to assess whether a plaintiff is permitted discovery on products beyond those identified in its initial 4(a) disclosure. That test asks: (1) as to relevance, the specificity with which the plaintiff has articulated how the unaccused products are relevant to its existing claims of infringement (and how they are thus "reasonably similar" to the accused products at issue in those claims); (2) whether the plaintiff had the ability to identify such products via publicly available information prior to the request; and (3) the nature of the burden on defendant(s) to produce the type of discovery sought. *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012). Each of these factors weighs against CFLT's attempt to foist the burden of identifying similar products on GE.

First, while CFLT identifies a group of characteristics it contends would capture "reasonably similar" products, it fails to articulate how those vague characteristics "are relevant to its existing claims of infringement." *Id*. CFLT provides no comparison of the characteristics to the asserted claims or their individual elements. Moreover, CFLT had initially contended that additional characteristics were required to identify "reasonably similar" products, including: "(1) the high frequency inverter alternating voltage being either substantially square or trapezoidal in shape; and (2) the alternating output voltage being substantially sinusoidal in shape." When GE notified CFLT that it could not determine those characteristics, CFLT conveniently removed them from its list, now contending that a reduced set of characteristics is sufficient. It is evident that CFLT is just trying to dramatically broaden this case without meeting even its most basic burdens.

Second, CFLT provides no reason it could not have identified additional widely-sold products had it not waited seven years to bring its case. Most GE CFLs were widely available consumer products. Had CFLT or its predecessors been even minimally diligent following *Therasense*, they could have easily purchased many, if not all, GE CFLs. CFLT's present difficulty locating additional GE CFL products is a direct consequence of its seven year delay. The burden of identifying products cannot simply shift to a defendant when a plaintiff makes a unilateral decision to delay seeking recovery. CFLT's argument that it did not exist until 2018 is not a

2

legitimate reason to shift the burden of identifying allegedly infringing products to GE, and CFLT cites nothing to support this proposition. Instead, it is CFLT's burden to identify the accused products. *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, No. CV 15-691-LPS-CJB, 2015 WL 7824098, at *1 n.2 (D. Del. Dec. 3, 2015) ("As for the time and effort that will go into the identification of accused products, that is [plaintiff's] burden . . . .").

Third, requiring GE to produce documents for every model of CFL ever produced and sold by GE is a substantial, undue burden. *See, e.g., Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. CIV. 04-1536-KAJ, 2005 WL 3988905, at *1 n.2 (D. Del. Oct. 7, 2005) ("[W]hat you are not entitled to do is to say you manufacture 15 different kinds of cell phones.  We tore down three. Tell us about your other 12.  Because I agree with the defendants that now what you are doing is you are telling manufacturers, you know what?  You got one or two things that are bad.  We want to you do an analysis of everything you make and tell us whether you are guilty on those fronts, too; and that is not what the law requires, and it's not what I'm going to require them to do."). It is undisputed GE does not track products based on the characteristics CFLT identified in ¶ 20 of the Complaint. In order for GE to identify the similar products, one or more GE employees will need to substitute their everyday responsibilities to catalog hundreds of circuit diagrams to effectively perform an expert analysis.  If GE can even find a qualified employee who can perform this analysis. Nearly all of the GE employees who worked on CFLs left after GE exited the CFL business in 2016.

The list of products attached to CFLT's proposed order does nothing to lessen the burden on GE. As an initial matter, this list was never previously provided to GE. GE saw it for the first time after CFLT filed its opening discovery letter. Moreover, just because a CFL SKU is listed in that document does not mean it was sold during the relevant time frame or has the relevant characteristics. Indeed, CFLT has no idea what the circuits in these products look like or when they were sold. Rather, CFLT listed every product SKU it could find regardless of sale date. To identify relevant products from this list, GE first has to determine if there were sales of that product during the relevant time frame and then, if there were sales, look to see whether the relevant characteristics CFLT identified are found in the product. Thus, the list provides no reduction in burden. To the contrary, the list only highlights the fact that all of these products were publicly available and could have been obtained by CFLT had it not delayed the suit for seven years.

Finally, this district has consistently rejected CFLT's suggestion that GE produce all documents for all CFLs to permit CFLT to make an infringement analysis. Doing so simultaneously absolves a plaintiff of its preliminary burdens and creates an enormous burden on defendants. *See Honeywell,* 2005 WL 3988905 at *20-21 (expressing "a real problem with the fundamental premise [of plaintiff's] argument" that plaintiff should get discovery on "everything [defendants] made in the last six years" so plaintiff could determine whether the products infringed). Any prejudice flowing from CFLT's delay and the fact that publicly available information and samples are no longer available for certain GE products must fall on CFLT and not on the innocent defendant who believed the matter resolved and that the Asserted Patents "are no longer going to be asserted."  *See* Ex. 1 at 12:13-14.

For all of the foregoing reasons, GE respectfully requests that the Court deny CFLT's requested order.

3

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc: Counsel of Record (via CM/ECF and electronic mail)