```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF DELAWARE

 3

 4   CFL TECHNOLOGIES LLC,              )
                                        )
 5              Plaintiff,              )
                                        ) C.A. No. 18-1444-RGA
 6   v.                                 )
                                        )
 7   GENERAL ELECTRIC COMPANY and GE    )
     LIGHTING, LLC,                     )
 8                                      )
                Defendant.              )
 9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
     CFL TECHNOLOGIES LLC,              )
10                                      )
                Plaintiff,              )
11                                      ) C.A. No. 18-1445-RGA
     v.                                 )
12                                      )
     OSRAM SYLVANIA, INC. and           )
13   LEDVANCE, LLC,                     )
                                        )
14              Defendants.             )

15                                      J. Caleb Boggs Courthouse
                                        844 North King Street
16                                      Wilmington, Delaware

17                                      Tuesday, September 17, 2019
                                        2:00 p.m.
18                                      Scheduling Conference

19   BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

20   APPEARANCES:

21            PHILLIPS GOLDMAN McLAUGHLIN & HALL, P.A.
              BY:  MEGAN C. HANEY, ESQUIRE
22
                        -and-
23
              FLACHSBART & GREENSPOON, LLC
24            BY:  WILLIAM W. FLACHSBART, ESQUIRE

25                                      For the Plaintiff
```

APPEARANCES CONTINUED:

      RICHARDS LAYTON & FINGER, P.A.
      BY:  KELLY E. FARNAN, ESQUIRE

           -and-

      MINTZ LEVIN
      BY:  STEPHEN J. AKERLEY, ESQUIRE

                    For the Defendants
                    General Electric Company and
                    GE Lighting, LLC

      SHAW KELLER, LLP
      BY:  JEFF CASTELLANO, ESQUIRE

           -and-

      GOODWIN PROCTER, LLP
      BY:  SRIKANTH K. REDDY, ESQUIRE

                    For the Defendants
                    Osram Sylvania, Inc. and
                    Ledvance, LLC

           ***   PROCEEDINGS   ***

      THE COURT:  All right.  Good afternoon.  Please be seated.

      These are the Rule 16s in CFL Technologies versus General Electric, Civil Action Number 18-1444, and CFL versus Ledvance, Civil Action Number 18-1445.

      Hi, Ms. Haney.  How are you doing?

      MS. HANEY:  Good, Your Honor.

      THE COURT:  Who have you got with you here?

      MS. HANEY:  This is William Flachsbart from

```
 1    Flachsbart & Greenspoon on behalf of plaintiffs.
 2              THE COURT:  Good afternoon, Mr. Flachsbart.
 3              MR. FLACHSBART:  Good afternoon, Your Honor.
 4              THE COURT:  And Mr. Castellano.
 5              MR. CASTELLANO:  Good afternoon, Your Honor.
 6    I'm here for the defendants in the 18-1445 case.  That's
 7    Ledvance and Osram, and I'm joined here by Shrikanth Reddy
 8    from Goodwin Procter.
 9              THE COURT:  All right.  Good afternoon to you
10    both.
11              Ms. Farnan.
12              MS. FARNAN:  Good afternoon, Your Honor.  I'm
13    here on behalf of GE and GE Lighting in the 18-1444 case,
14    and I am joined by Stephen Akerley from Mintz Levin.
15              THE COURT:  All right.  Good afternoon to you
16    both.  Good afternoon to all of you.
17              All right.  So I looked at this, and I take it
18    that other than the question about whether or not everything
19    should be put on hold so defendants can chase down their
20    marking defense, that otherwise, if I don't go for that
21    alternative, the parties have pretty much agreed on the
22    schedule; right?
23              MR. FLACHSBART:  Correct, Your Honor.
24              THE COURT:  Okay.  Well, I don't want to spend a
25    long time talking about marking, but I guess since we've got
```

1   all these people showing up from out of town that want to
2   talk about marking, I'll give you a very short amount of
3   time to explain why I should do what you want.
4                MR. REDDY:  Okay.  So Your Honor, I'll go first
5   on behalf of Ledvance and Osram Sylvania, Incorporated.  In
6   our case, so just a little bit of background for our case.
7   As Your Honor may recall, this case is a little bit unusual.
8   We have five --
9                THE COURT:  Right.  Right.  The formerly
10  unenforceable patents.
11               MR. REDDY:  Correct, Your Honor.  So there's
12  five asserted patents in our case.  All of them are expired.
13  All of them expired before the complaint was filed.
14               Two of those complaints expired in 2013.  One
15  expired in 2014.  One expired in 2015, and one expired in
16  2018.  So four of those five patents were previously
17  asserted.  Two were found unenforceable for inequitable
18  conduct, and two were dismissed with prejudice.
19               And so the reason, in the first instance, why
20  marking certainly matters here is if we're able to find that
21  the plaintiff didn't or can't satisfy its burden of
22  complying with the marking requirement, then there cannot be
23  any remedy in this case, and then essentially the case
24  should be dismissed.
25               And CFL makes a few arguments in their paper

1  that I just wanted to respond to, certainly at a high level.
2  They're arguing that we had notice of the patents because we
3  were previously sued upon them, and that's certainly not the
4  law under the marking.  That's not the requirement.  Right.
5  Amsted versus Buckeye Steel makes clear there needs to be an
6  allegation of infringement against a specific accused
7  product.
8              And at least on our motion to dismiss, they
9  argued that they're only accusing products that had nothing
10 to do with the earlier cases.  So if they're not asserting
11 infringement against cases from the earlier cases, that
12 means that there hasn't been any notice going forward.  And
13 so if there's no notice, that means we should consider
14 whether or not CFL and its predecessors were requiring the
15 licensees to mark.
16             And as we've put in our paper, we certainly know
17 that there were previous licensees.  We think that the early
18 discovery would allow the parties to explore, you know, the
19 nature of the agreements and as well as whether or not those
20 licensees comply with the marking --
21             THE COURT:  And so why shouldn't we just do the
22 schedule the plaintiffs propose, and you can do your
23 discovery on marking as you go along?  And when you think
24 you've got to the point where it's a slam dunk winner, only
25 a person who doesn't care about Rule 11 would oppose your

1  motion.  And then if, for some reason or another, I don't
2  agree with you, it's not like we've wasted a year.
3           MR. REDDY:  Well, so I think from our
4  standpoint, the discovery burdens that we would have to put
5  forth in order to get to that point are disproportional to
6  kind of the needs of the case, especially --
7           THE COURT:  But you know, this is not, or I'm
8  guessing, tell me if I'm wrong, this is not like, you know,
9  the development story of DNA or something here.  You're
10 talking about light bulbs; right?
11          MR. REDDY:  A certain type of light bulb, but
12 yes.  Yeah.
13          THE COURT:  And so how burdensome is discovery
14 actually going to be?  Maybe your light bulbs are built
15 according to some kind of specification, but I think, as you
16 pointed out, they're apparatus claims.  You know, the sales
17 history of the light bulbs, I assume is probably not that
18 hard of a thing to track.  It strikes me that the discovery
19 in this case should be compared to most discovery, fairly
20 modest.
21          MR. REDDY:  Well, in this instance, I would
22 disagree with that, Your Honor.  That's because of the
23 nature of the scope of the accused products at least based
24 on the complaint.
25          The plaintiff is suggesting, at least with

1    respect to my clients, that essentially every fluorescent
2    light bulb ever made, you know, over the course of the past
3    six years --
4              THE COURT:  Except for the ones that they
5    already accuse -- oh, right.
6              MR. REDDY:  Right.  Well, and even the discovery
7    we received, they're asking dating from 1994 onwards, and so
8    that's 25 years of light bulbs that they want to put into
9    play here.  And so the scope of discovery it would take in
10   order to address that, and obviously, you know, there's, by
11   no means, agreeing to 25 years' worth of discovery.
12             THE COURT:  Yeah, I didn't think you would.
13             MR. REDDY:  Yeah, but you know, there's
14   certainly -- it's a much more complicated case given the
15   nature of the assertions that are in the complaint.
16             THE COURT:  All right.
17             MR. AKERLEY:  Your Honor, if I may add.
18             THE COURT:  Yeah.
19             MR. AKERLEY:  We're already going to see an
20   immediate discovery dispute, we know, but I think if we tee
21   that up and get past this, then it will be more efficient.
22   Counsel just noted that their discovery requests, one,
23   they're going back to 1994.
24             THE COURT:  Yeah.  Yeah.  But you know, and I'm
25   guessing, and Ms. Farnan is sitting down there, she can be

1      the truth squad, but doesn't it always start off with give
2      me everything in the history that you've ever done, and you
3      say, we object, let's talk about it, and you narrow it down
4      to something reasonable for whatever is actually at issue in
5      the case?
6                    MR. AKERLEY:  Well, I certainly would have
7      expected a different starting point certainly, but they're
8      also attempting to shift the burden already.  We know that
9      under Arctic Cat, the burden on proving that they complied
10     with the marking requirement falls squarely on the
11     plaintiff.  Undeniable.
12                   We have identified -- of the two licensees we
13     know about, because they've been publicized, Phillips and
14     TCL, we've identified dozens of CFL's that we believe would
15     fall under those licenses.  Now the licenses haven't even
16     been produced yet.
17                   THE COURT:  Right.  Right.  You're pretty early
18     in the case.
19                   MR. AKERLEY:  This case has been pending for
20     quite a long time.
21                   THE COURT:  Right, but wasn't that because you
22     were filing your first round of motions?
23                   MR. AKERLEY:  We asked -- for this very purpose,
24     Your Honor, we asked for GE -- we asked for these licenses.
25     We asked Mr. Flachsbart, gosh, it's got to be eight months

1   ago, and he said he would get them to us.

2   　　　　　And then even though Rule 26 is in play here and
3   there's no confidentiality issue, we have yet to see those.
4   Now, we could be much further along.

5   　　　　　But my point is this:  We've identified those
6   products.  Arctic Cat says it now goes -- the burden shifts
7   back to the plaintiff to show that they complied.  Right.

8   　　　　　And this is what Interrogatory Number 1 says
9   from the plaintiff already, identify each unmarked product
10  that is allegedly covered by any of the patents-in-suit and
11  the dates such products were allegedly sold.

12  　　　　　We've done that without the sales date because
13  there's third-party products.  Dozens of products.

14  　　　　　And then two, the basis for defendants'
15  contention that each unmarked product was allegedly sold
16  pursuant to a license under any of the patents-in-suit and
17  identification of each claim that allegedly covers each
18  unmarked product.

19  　　　　　I don't have to answer that question.
20  Mr. Flachsbart has to answer that question, quite literally,
21  for every of the three or four dozen products we've
22  identified.

23  　　　　　If he says for this --

24  　　　　　THE COURT:  So Mr. Akerley --

25  　　　　　MR. AKERLEY:  Or his client says -- yes.

1      THE COURT: You know, I'm not going to resolve
2  discovery disputes, and questions about burden of proof, and
3  who's supposed to mean what to whom at this point. And I
4  gather it's an issue in the case.
5      Do you have anything more to add?
6      MR. AKERLEY: It was simply noting, Your Honor,
7  that to put those issues first where they are going to be
8  squarely first as opposed -- and treating those separately
9  because they are completely case dispositive would relieve a
10 very substantial burden. Right.
11     THE COURT: Yeah. Yeah. But you know, and I'm
12 sorry, because it may be Mr. Reddy's client, not yours --
13 actually I've lost track now. Which one of the two of you
14 is Ledvance, I guess?
15     Which one of the two of you did I do the
16 collateral estoppel, res judicata, or was that both of you?
17     MR. AKERLEY: It was Ledvance's motion. We
18 would have benefited from it certainly.
19     THE COURT: And so while I was doing that, which
20 took some time, were you all just hanging around waiting to
21 see what would happen?
22     MR. FLACHSBART: We had agreed to stay the GE
23 case at their request while that was pending.
24     THE COURT: All right. All right. That's
25 helpful.

1                       Okay.  And I'm sorry, I interrupted some --
2                       MR. AKERLEY:  Just finally, the one thing I
3      don't want to get lost in the shuffle here is that the basis
4      for bringing the lawsuit is the change in the law of
5      Therasense.
6                       THE COURT:  Right.
7                       MR. AKERLEY:  Right.  That's 2011, Your Honor.
8      All right.
9                       The client -- I'm certainly not going to blame
10     Mr. Flachsbart for the delay because I don't know when he
11     picked up even knowledge of Mr. Nilsson.  But Nilsson, GO
12     Foundation, whoever was running the show, sat idle for eight
13     full years, seven full years at least.
14                      THE COURT:  Yeah.  What does that have to do
15     with anything?
16                      MR. AKERLEY:  Well, in that time frame, now
17     you're asking GE, Ledvance, Osram, and others to go back now
18     a full ten years, eight to ten years to try to get
19     information that they're now asking for which we believe
20     they shouldn't bear that burden at all.  Right?
21                      I mean, people have retired --
22                      THE COURT:  I guess you could look at it like
23     some amount of damages washed away while they waited; right?
24                      MR. AKERLEY:  I think all their damages washed
25     away.

1        THE COURT:  I mean, but even just going back six
2    years --
3        MR. AKERLEY:  Yes.
4        THE COURT:  -- time marches and things drop out
5    at the back end.
6        MR. AKERLEY:  That's absolutely right.  I mean,
7    I don't even think it's a dispute in the case that the
8    damages period for -- even the longest damages period is
9    less than two years for General Electric.  But so my point
10   is this is that GE now finds itself after having obtained a
11   dismissal with prejudice in 2008 on two of the three
12   patents, the third patent was --
13       THE COURT:  Oh, there's only three asserted
14   against you?
15       MR. AKERLEY:  Only three against us.
16       THE COURT:  Oh, okay.
17       MR. AKERLEY:  The third was let go, abandoned in
18   2014, and GE has been going along with its business now for,
19   you know, 11 full years.
20       THE COURT:  Okay.
21       MR. AKERLEY:  And the fact that it should bear
22   any burden at the beginning of this case while the plaintiff
23   sat idle on its rights, I think the Court should take that
24   into account.  And I think to simply bifurcate this one
25   issue which is case dispositive certainly can't be

1        considered to be a burden on the plaintiff or in any way
2        prejudicial.
3                    THE COURT:  Well, I mean, you know, the
4        defendants took their best shot with the collateral
5        estoppel, res judicata, et cetera, so that postponed things
6        for a while.  Whatever the sympathy I might have for you for
7        the let's do marking first, I'd have a lot more sympathy if
8        we hadn't already had pretrial motions that had the effect
9        of delay.  I know you sincerely believe you would win, and
10       that would be the end of it.
11                   I don't doubt that you sincerely believe you
12       will win now, and it will be the end of it.  But I can't
13       manage these cases just based on the degree of confidence
14       that one side or the other has in the ultimate outcome of
15       the case.
16                   So I'm not going to do the bifurcated discovery
17       or the bifurcated schedule.  You know, if we get to a point,
18       and perhaps it is after claim construction where the ducks
19       are all in a row, and you feel so confident in your marking
20       defense that you're willing to do it and forego all other
21       summary judgment issues forever, you can still have a trial,
22       of course.  You know, I'll consider it then.  But I think
23       it's in the overall balance of things in these cases that
24       are now a year old, I think it's time to get everything
25       moving forward.  So I do appreciate that you worked

1    something out in terms of the overall moving forward, and
2    I'm prepared to give you dates for these things.
3                So starting with GE --
4                MR. FLACHSBART:  If I may, Your Honor, they had
5    suggested flipping Ledvance.  We, in our original schedule
6    proposal, had the GE trial going like six weeks before the
7    Ledvance trial, and they flipped that which actually made
8    sense because Ledvance has more patents.  And so if some
9    issues are determined in that case, that could impact GE
10   more thoroughly.
11               THE COURT:  So what you're saying is all the
12   parties want Ledvance to go first?
13               MR. FLACHSBART:  In terms of the trial date,
14   yes, but I think everything else is in lockstep.
15               THE COURT:  Okay.  Hold on just a minute.
16               Did you write a cover letter saying this because
17   that's the way my staff has organized these things?
18               MR. FLACHSBART:  My apologies.  It was in the
19   last draft of the scheduling order and then the dates
20   because I think it got scrubbed, so I think --
21               THE COURT:  All right.  So in any event, we'll
22   do Ledvance first.
23               MR. FLACHSBART:  Sure.
24               THE COURT:  So the proposed trial date is
25   September 27th of 2021.

```
 1                    MR. FLACHSBART:  Okay.
 2                    THE COURT:  The proposed pretrial conference
 3    date is September 10 of 2021 at 2:00 p.m.  And the proposed
 4    hearing on claim construction is at 9:00 a.m. on
 5    September 21 of 2020.  And I think those are all the dates
 6    you needed from me.
 7                    So the CFL versus GE, the proposed trial date
 8    was October 18 of 2021.  The proposed pretrial date
 9    September 24th of 2021 at 8:30 a.m.  And I think the claim
10    construction date and time is the same as in the other one,
11    I think, which is 9:00 a.m. on September 21st; right?  Same
12    date and time.
13                    Do you want to talk about anything else while
14    you're here?
15                    MR. REDDY:  We don't have anything else, Your
16    Honor.
17                    MR. FLACHSBART:  No, thank you.
18                    MR. AKERLEY:  All set.
19                    THE COURT:  So I will cross out the bifurcated
20    stuff and sign these so you don't need to resubmit them.
21    We'll file them, and I'll look forward to hearing from you
22    down the road.
23                    All right?
24                    (Everyone said, Thank you, Your Honor.)
25                    THE COURT:  We'll be in recess.
```

1  (Scheduling Conference was concluded at 2:18
2  p.m.)
3  I hereby certify the foregoing is a true and
4  accurate transcript from my stenographic notes in the
5  proceeding.
6  /s/ Heather M. Triozzi
   Certified Merit and Real-Time Reporter
7  U.S. District Court
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25