**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CFL TECHNOLOGIES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 18-1444-RGA |
| GENERAL ELECTRIC COMPANY and GE LIGHTING, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | ▮▮▮▮▮▮▮▮▮▮ |

PUBLIC VERSION FILED:
FEBRUARY 6, 2020

**DEFENDANTS GENERAL ELECTRIC COMPANY AND GE LIGHTING, LLC'S
OPENING DISCOVERY LETTER DATED JANUARY 23, 2020 FROM
DANIEL M. SILVER, ESQ. TO THE HONORABLE RICHARD G. ANDREWS**

DATED: January 23, 2020

**McCARTER & ENGLISH, LLP**
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King St., 8th Floor
Wilmington, DE  19801
(302) 984-6331
mkelly@mccarter.com
dsilver@mccarter.com
ajoyce@mccarter.com

*Of Counsel:*

Stephen J. Akerley
Philip C. Ducker
Adrian Kwan
**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.**
44 Montgomery St #36
San Francisco, CA 94104
(415) 432-6000
SJAkerley@mintz.com
PCDucker@mintz.com
AKwan@mintz.com

*Attorneys for Defendants General Electric
Company and GE Lighting, LLC*

## I.      INTRODUCTION

This case involves two patents, U.S. Patent Nos. 5,510,681 and 5,510,680 (collectively, the "Licensed Patents"), that were found unenforceable due to inequitable conduct in a final judgment affirmed on appeal. Both patents expired in 2013 as unenforceable because the various owners of the patents never undertook any action to revive them. Undeterred, Plaintiff filed this suit in 2018 on the novel theory that *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) automatically raised these patents from the dead, thereby allegedly entitling it to damages for GE's purported infringement for eight months before the patents expired. GE raised several defenses, including failure to mark pursuant to 35 U.S.C. § 287(a). Plaintiff's failure to mark precludes the award of any damages. GE has identified hundreds of licensed products that it believes practice the '680 and '681 patent claims, shifting the burden to Plaintiff to explain why those products need not be marked. Plaintiff, however, has refused to provide a complete answer, prompting this dispute. GE respectfully requests that the Court enter an order compelling Plaintiff to respond to GE's Interrogatory No. 4, as set forth below.

## II.      RELEVANT BACKGROUND

This case originally involved three patents—the Licensed Patents and Patent No. 6,459,213 ("the '213 Patent"). All three patents are licensed to companies that make and sell compact florescent light bulbs ("CFLs") similar to the GE products at issue. The known licensees are Technical Consumer Products, Inc. ("TCP"), Phillips Electronics North America, Corp. ("Philips"), and Aero-Tech Light Bulb Co. ("Aero-Tech"). GE has identified hundreds of CFL models sold by the licensees (the "Licensed Products") that were not marked. *See, e.g.*, D.I. 19 at 15-19.

In its first set of interrogatories GE asked Plaintiff to identify the Licensed Products that had been marked with the Licensed Patents, and, if they were not marked, the legal and factual bases for why marking was unnecessary. *See* Ex. 1, Plaintiffs First Supplemental Resp. to GE's Interrogatories at Rog. 3-4. GE requested a claim-by-claim and element-by-element analysis for each Licensed Product Plaintiff contends did not need to be marked. *Id*. at Rog. 4. Initially, Plaintiff refused to respond to these interrogatories entirely, arguing it is GE's burden to prove Plaintiff's failure to mark. After weeks of delay, Plaintiff admitted that it is unaware of any products marked with the Licensed Patents. *Id.* at Rog. 3. Plaintiff also admitted that Aero-Tech sold products that practiced the asserted claim of the '213 Patent. *Id*. Because Aero-Tech sold unmarked, licensed products that practiced the '213 Patent, Plaintiff dismissed the '213 Patent with prejudice. *See* D.I. 42. While Plaintiff also admits that unmarked Licensed Products were sold by TCP and Philips between August 10, 2004 and January 23, 2008, it refuses to provide a complete response with respect to the Licensed Patents. Ex. 1 at Rog. 3.

Plaintiff will not answer the question of whether the Aero-Tech products practice the claims of the Licensed Patents. Aero-Tech holds a license to the Licensed Patents and to the extent its products practice the Licensed Patents, it was required to mark those products. Plaintiff's responses also fail to specify which claims of the Licensed Patents are practiced by the TCP and Philips products. If Plaintiff intends to argue that the marking requirement applies on a claim-by-claim basis, as opposed to a patent-by-patent basis, Plaintiff must explain which claims of the Licensed Patents are (or are not) practiced by the identified TCP and Philips products. GE contends

the requested responses are case dispositive and Plaintiff has no legitimate basis to deny GE this factual information.

## III.    ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). GE has properly sought discovery regarding whether Plaintiff's licensees' unmarked products were covered by the Licensed Patents. Plaintiff should be compelled to respond fully to GE's discovery.

### A.    Unmarked Aero-Tech Products

Whether Aero-Tech products practice the claims of the Licensed Patents is central to GE's marking defense. If Aero-Tech's unmarked products practice the Licensed Patents, Plaintiff cannot recover any damages for GE's alleged infringement. 35 U.S.C. § 287(a). The burden of proving whether a licensed product practices an asserted patent falls on the patentee. *See Artic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 873 F.3d 1350, 1368-69 (Fed. Cir. 2017). In *Artic Cat*, the Federal Circuit explained that "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id*. at 1368. This initial burden is described as having a low bar requiring the alleged infringer only to "put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. ("The alleged infringer's burden is a burden of production not one of persuasion or proof."). Once the initial burden is met, the patentee "bears the burden to prove the products identified do not practice the patented invention." *Id*.

Here, GE spent considerable resources identifying hundreds of products sold by Aero-Tech that it believes practice the Licensed Patents. *See* Ex. 2, GE Resp. to CFLT Rogs at Rog. 1. GE's belief is based upon Aero-Tech's license to the Licensed Patents and Plaintiff's statement that all CFLs practice the Licensed Patents. D.I. 1 at 4, ¶ 20. Plaintiff now bears the burden "to prove the products identified do not practice the patented invention." *Artic Cat*, 873 F.3d at 1368. Plaintiff should be compelled to respond to Rog. No. 4 for the identified Aero-Tech products.

### B.    Unmarked TCP and Philips Products

Plaintiff admitted that TCP and Philips sold unmarked, Licensed Products between August 10, 2004 and January 23, 2008 that practice the Licensed Patents. Ex. 1 at Rog. 3. However, Plaintiff's answer does not identify any specific patent claims. If Plaintiff intends to argue that marking applies on a claim-by-claim rather than a patent-by-patent basis, Plaintiff must supplement its response to Rog No. 4 to identify the specific claims of the Licensed Patents that are (or are not) practiced by the TCP and Philips products. *Artic Cat*, 873 F.3d at 1368.

### C.    Plaintiff Is Not Excused from Answering GE's Rog. No. 4 ("Rog. No. 4")

GE's Rog. 4 asks Plaintiff to "state the full legal and factual bases for [its] contention that [each unmarked product identified by GE] was not required to be marked, including identifying on a claim-by-claim and element-by-element basis each claim element [it] contends is or is not

present in the product literally or under the doctrine of equivalents and the bases for each such contention." Plaintiff partially answered Rog. 4 as to TCP and Philips products but refused to respond as to Aero-Tech products. Plaintiff contends that the 2006 lawsuit against GE for infringing the '681 and '680 patents renders marking irrelevant as to those patents as the relevant damages period commenced after GE was sued by Nilssen/Geo in 2006. In other words, Plaintiff's theory is that the 2006 complaint constitutes actual notice of infringement for all GE CFL products for all time and that no further notice was required, even after the patents were found unenforceable and the action was dismissed with prejudice. GE disagrees. Plaintiff cannot use this dispute regarding notice under § 287(a) as an excuse for its failure to answer GE's legitimate discovery request. Plaintiff should be compelled to answer Rog. No. 4 for several reasons.

First, the burden is low. Plaintiff has samples of the Aero-Tech products it can analyze. Second, Plaintiff waived any objection to responding with respect to the Aero-Tech products when it chose to answer Rog. Nos. 3-4 as to TCP and Philips products and the Aero-Tech products as they relate to the '213 Patent. Ex. 1. Third, the issue of notice is irrelevant to this dispute. Rog. No. 4 does not ask Plaintiff to explain whether GE had notice of the Licensed Patents or to explain GE's purported liability for damages. It seeks only information related to marking of Licensed Products.

Finally, Plaintiff's novel argument regarding notice fails on its face. The earlier suit involving the Licensed Patents was dismissed with prejudice, and a dismissal with prejudice is an adjudged finding of non-infringement. *Molinaro v. Am. Tel. & Tel. Co.*, 460 F. Supp. 671, 676 (E.D. Pa. 1978). GE could not have been on notice of infringement after it had been found not to infringe the Licensed Patents, especially when Plaintiff's counsel represented that "[w]ith the holdings on appeal in the Osram case, those patents are no longer going to be asserted." *Nilssen et al v. General Electric Co.*, Case No. 1:06-cv-04155 D.I. 118 (N.D. Il. Jan. 31, 2017).

Moreover, notice of infringement must be product-specific. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). In order to overcome claim preclusion, Plaintiff argued this action is "against products not in existence during the prior litigation." *See* Case No. 1-18-cv-01445-RGA, D.I. 18 at 1. GE, therefore, had no notice of infringement on the accused product as there was no post-dismissal "specific charge of infringement by a specific accused product or device." *Id.* Indeed, once the lawsuit was finally resolved, logically it could no longer provide notice of future infringement. The decision in *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 610 F. Supp. 2d 370, 389-90 (M.D. Pa. 2009) *aff'd*, 477 F. App'x 740 (Fed. Cir. 2012), is instructive. In *Arlington*, the parties settled a lawsuit involving two patents. After a dispute arose between the parties, the licensor sued the licensee naming a previously unaccused product line and argued that the settlement agreement "place[d] Bridgeport on continuing notice of its duty to refrain from infringing the '050 patent." *Id.* at 390. The Court rejected this argument finding "the Settlement Agreement did not place Bridgeport on actual notice that its [previously unaccused] products infringed Arlington's patent, nor could it." *Id.* Plaintiff admits the accused products here are different than the products previously at issue. Thus, GE did not have pre-filing notice of infringement. Plaintiff's novel argument to the contrary does not excuse its failure to answer Rog. No. 4.

3

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc:    Counsel of Record (via CM/ECF and electronic mail)

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CFL TECHNOLOGIES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 18-1444-RGA |
| | Judge Richard G. Andrews |
| GENERAL ELECTRIC COMPANY and GE LIGHTING, LLC, | |
| Defendants. | |

**PLAINTIFF CFL TECHNOLOGIES LLC'S FIRST SUPPLEMENTAL
RESPONSES TO DEFENDANT GENERAL ELECTRIC
COMPANY'S FIRST SET OF INTERROGATORIES (NOS. 1-5)**

Plaintiff CFL Technologies LLC ("CFLT" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure 26 and 33, for its first supplemental responses and objections to Defendant General Electric Company's ("GE") First Set of Interrogatories ("Interrogatories") states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

1.      CFLT objects to the Definitions and Instructions of GE's Interrogatories to the extent that they are inconsistent with the Federal Rules of Civil Procedure or the Local Rules for the District of Delaware. CFLT will respond to these Interrogatories to the extent required by these rules.

2.      CFLT objects to the Definitions to the extent that they define the terms "Plaintiff," "You," "Your" or "CFLT" to include any prior owner(s) of the patents-in-suit, attorneys who have represented any such prior owner(s) and/or other individuals or entities otherwise affiliated with such prior owner(s).

3.      CFLT objects to the Interrogatories to the extent that they seek discovery whose benefit is outweighed by its burden and expense, taking into account the needs of the action and the other factors set out under Federal Rule of Civil Procedure 26(b)(2).

4.      CFLT objects to the Interrogatories to the extent that they seek information protected by attorney-client privilege, the work product doctrine, or that is subject to any other applicable privilege.

5.      CFLT objects to the Interrogatories to the extent that they call for the production of any documents, including, but not limited to, publicly available documents, such as those available through the website for the U.S. Patent & Trademark Office ("PTO").

6.      CFLT objects to the Interrogatories to the extent that they require construction of a claim term. The schedule for claim construction has been set by the Court (D.I. 24), and, thus, any such request prior to claim construction is premature. To the extent that CFLT provides an answer requiring claim construction, CFLT reserves its right to supplement and/or amend its answer(s) upon the Court's construction of claim terms.

7.      CFLT's objections and responses are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving, the right to question the competency, relevancy, materiality, privilege, and use as evidence for any purpose of this material in any proceeding or trial of this action or any other action.

## RESPONSES

<u>**INTERROGATORY NO. 1**</u>:

Separately for each of the patents-in-suit identify any and all persons to whom You have ever licensed or offered to license, or persons who have requested to license, or to whom You have granted or offered to grant any other rights under the patent and describe in detail (a) all persons involved; (b) the effective date(s) of the license and date(s) of termination; (c) all license agreements; (d) all terms of such license, including the licensing fees and/or licensing rate, restrictions on the licensing terms, including field of use restrictions; (e) all monies received under each license, including providing all details concerning specific product sales or uses that were the purported bases for those monies; (f) whether the licensing agreement is currently in effect; (g) whether the licensing agreement was ever in breach or terminated, and if so, by whom and for what; and (h) all products made, used, offered for sale, sold, or imported under the license.

**RESPONSE**: CFLT lacks first-hand knowledge of licensing activity prior to its acquisition of the patents-in-suit. However, CFLT, to the best of its ability, and reserving its right to amend and/or supplement its responses, responds as follows, based on information available to it:

**Geo Foundation, Ltd. (November 22, 2000 – January 28, 2013)**. To the extent that Geo Foundation, Ltd. ("Geo") has been licensed, in accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records already produced as CFLT 000001-000032, CFLT 000141-000149 and other records expected to be produced. CFLT understands that Geo's license rights were terminated by an agreement with Beacon Point Capital, LLC ("Beacon") executed on January 28, 2013. Further, CFLT understands that Geo never sold any products at all, and, thus, it is CFLT's understanding that Geo never sold any products covered by any of the patents-in-suit.

**Technical Consumer Products, Inc. (August 10, 2004 – January 23, 2008)**. To the extent that Technical Consumer Products, Inc. ("TCP") has been licensed, in accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records already produced as CFLT 000033-000070, CFLT 000085-000090, CFLT 000138-000140 and other records expected to be produced. CFLT understands that its August 10, 2004 license (as later amended) was deemed to have been terminated as of January 23, 2008, as stated in an arbitration decision. CFLT has no knowledge as to whether TCP sold any licensed CFLs covered by any of the patents-in-suit.

**Philips Electronics North America Corporation (March 2, 2006 – January 23, 2008)**. To the extent that Philips Electronics North America Corporation ("Philips") has been licensed, in accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records already produced as CFLT 000071-000084, CFLT 000091-000101 and other records expected to be produced. CFLT understands that Philips paid no royalties under its sub-license from TCP, that TCP's sub-licensor rights have been assigned to Beacon, that Beacon is presently engaged in arbitration proceedings against Philips and that Beacon has taken the position that the sub-license to Philips terminated on January 23, 2008 (the same date that the Geo-TCP license was deemed to have been terminated). CFLT has no knowledge as to whether Philips sold any licensed CFLs covered by any of the patents-in-suit.

**Aero-Tech Light Bulb Co. (March 17, 2006 – unknown)**. To the extent that Aero-Tech Light Bulb Co. ("Aero-Tech") has been licensed, in accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records already produced as CFLT 000102-000137. CFLT has no knowledge as to whether the Aero-Tech license was terminated or whether Aero-

Tech paid royalties pursuant to its license, breached or terminated its license or sold any products under the license.

**Technical Consumer Products (July 25, 2013 – January 9, 2018)**. CFLT understands that Geo/Nilssen received an award as a result of arbitration over TCP's royalty payment obligations stemming from the license originally executed in 2004 (and subsequent amendments thereto). CFLT further understands that the then-owner of the patents-in-suit (Beacon), in 2013, agreed to settle and provide a prospective license for a number of patents, including the '681 and '680 patents, but excluding the '213 patent. (CFLT 000150.) CFLT is not privy to the monetary terms of the 2013 Beacon-TCP settlement, any monetary amounts actually paid by TCP or the terms of any license resulting from settlement (other than a list of "Licensed Patents").

**Feit Electric Company**. CFLT understands that Feit sought a license to resolve issues related to its CFL products at issue in litigation between Nilssen/Geo and Wal-Mart *et al*. To CFLT's knowledge, no license was ever granted to Feit. In accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records expected to be produced.

**Osram Sylvania, Inc**. CFLT understands that Osram Sylvania, Inc. ("Osram") and Nilssen/Geo engaged in discussions aimed at resolving, at least, the litigation brought by Nilssen in August 2000, but that no contractual resolution was achieved. CFLT also understands that Nilssen and/or Geo provided Osram with at least one statement of partial non-liability. CFLT will undertake a diligent search of its records, and will produce any relevant non-privileged documents from which answers to this Interrogatory may be ascertained.

*        *        *

CFLT objects to the ambiguity of the phrase "all persons involved." CFLT assumes that the phrase "all persons involved" refers, with respect to license rights or other rights under the patents-in-suit, to persons who received, requested or were offered, such a license or other rights.

CFLT also objects to this Interrogatory to the extent its seeks information about agreements or potential agreements relating to products other than CFLs. Notwithstanding that objection, in accordance with Fed. R. Civ. P. 33(d) and to the extent within CFLT's possession, custody or control, CFLT expects to produce all agreements relating to license or other rights under patents issued to Ole Nilssen, without restriction as to the type of products licensed.

**INTERROGATORY NO. 2:**

For each of the patents-in-suit, provide all facts and all corroborating documents regarding the ownership of any right, title, interest, or ability to sublicense in or to each patent, including identifying the entity that currently owns the right, title, interest, or ability to sublicense and a full explanation of the chain of title to any and all rights, title, interests, or ability to sublicense in or to each of the patents-in-suit.

**RESPONSE**: CFLT lacks first-hand knowledge of patent assignment activity prior to its acquisition of the patents-in-suit. However, CFLT, to the best of its ability, and reserving its right to amend and/or supplement its responses, responds as follows, based on information available to it. Ole Nilssen (the inventor) originally owned all patents-in-suit. Following his death on October 10, 2012, CFLT understands that the Estate of Ole Nilssen assigned rights, title and interest to the patents-in-suit to Ellen Nilssen pursuant to a document dated September 5, 2013. Thereafter, Ellen Nilssen assigned rights, title and interest to the patents-in-suit to Beacon pursuant to a document dated September 5, 2013. On June 15, 2018, Beacon assigned to CFLT all rights, title and interest

6

to the patents-in-suit. The foregoing information relating to ownership rights is publicly available via, *inter alia*, PTO records.

Regarding any right of sub-license, CFLT incorporates by reference its Response to Interrogatory No. 1 to the extent that Geo and TCP previously possessed sub-licensing rights under any of the patents-in-suit. As indicated in that response, CFLT understands that TCP's sublicensing rights were terminated as of January 23, 2008 and that Geo's sub-licensing rights were terminated pursuant to its agreement with Beacon executed on January 28, 2013.

**INTERROGATORY NO. 3:**

Separately for each of the patents-in-suit, identify whether each Licensed Product was marked pursuant to 35 U.S.C. § 287 or otherwise, how each product was marked including the location and manner of the marking, the individuals or entities that marked each product, and any interruptions to or other changes in the practice of marking each product since it was first marked.

**RESPONSE**: CFLT lacks first-hand knowledge of marking activity prior to its acquisition of the patents-in-suit. However, CFLT, to the best of its ability, and reserving its right to amend and/or supplement its responses, responds as follows, based on information available to it.

CFLT is unaware of any product having been marked with any number of any of the patents-in-suit.

Since its initial response to this Interrogatory, CFLT has undertaken an analysis of at least one Aero-Tech CFL, and has formed the belief that the analyzed Aero-Tech CFL is covered by claim 19 of the '213 Patent.

Although CFLT has not analyzed any CFLs sold by TCP between August 10, 2004 and January 23, 2008, on June 18, 2003, Nilssen brought suit against TCP, accusing TCP CFLs of infringing the '681 and '680 Patents. For purposes of this litigation only (and to streamline issues

for trial), CFLT does not dispute that unmarked and licensed TCP CFLs sold between August 10, 2004 and January 23, 2008 were covered by one or more claims of the '681 and '680 Patents.

Although CFLT has not analyzed any CFLs sold by Philips between March 2, 2006 and January 23, 2008, on August 13, 2004, Nilssen brought suit against a number of CFL retailers (including Home Depot), accusing Philips CFLs (sold by Home Depot) of infringing the '681 and '680 Patents. For purposes of this litigation only (and to streamline issues for trial), CFLT does not dispute that unmarked and licensed Philips CFLs sold between March 2, 2006 and January 23, 2008 were covered by one or more claims of the '681 and '680 Patents.

**INTERROGATORY NO. 4:**

For each Licensed Product, state the full legal and factual bases for Your contention that such product was not required to be marked, including identifying on a claim-by-claim and element-by-element basis each claim element You contend is or is not present in the product literally or under the doctrine of equivalents and the bases for each such contention.

**RESPONSE**: CFLT contends that, to the extent the '681 or '680 Patents covered any licensed product, GE was on notice of its infringement of those patents as of August 1, 2006, when was it sued by Nilssen and Geo for infringement of those patents. Under 35 U.S.C. § 287, the limitation on damages due to a failure to mark a licensed product ends once "the infringer was notified of the infringement" and "[f]iling of an action for infringement shall constitute such notice." CFLT, however, reiterates that it is without knowledge of any licensee having sold licensed, unmarked products covered by any patent-in-suit.

CFLT objects to this Interrogatory to the extent that it purports to shift the burden on CFLT of negating GE's premise that any licensee sold unmarked products covered by one or more of the patents-in-suit. GE bears the burden of production "to articulate the products it believes are

unmarked 'patented articles' subject to § 287." *Arctic Cat Inc. v. Bombardier Rec. Prods*., 876 F.3d 1350, 1368 (Fed. Cir. 2017). Although GE has alleged that Philips and TCP have purportedly sold products having certain model numbers, GE has neither alleged that such products were actually covered by any patent-in-suit nor sold during the period of time in which Philips and TCP were authorized by a license under any Nilssen patent to sell such products. Nor has GE provided evidence of any alleged patent coverage. It is not CFLT's burden to seek out product specifications and/or product samples necessary to ascertain whether any product identified in GE's listing of non-party model numbers from an unknown timeframe constitutes an unmarked product covered by any patent-in-suit during any period of time in which such product may have been licensed under any patent-in-suit. Notwithstanding the foregoing objections, CFLT incorporates by reference its Response to Interrogatory No. 3.

**INTERROGATORY NO. 5:**

For each asserted claim in each of the patents-in-suit, identify the earliest priority date to which You contend that such claim is entitled and describe with particularity all factual and legal bases for each such claimed priority date, including providing a chart identifying on an element-by-element and claim-by-claim basis all portions of the specification of any earlier application supporting that priority date, and if you intend to rely on a conception date, an identification and description in detail of all facts and circumstances relating to the asserted claim's conception, diligence, and reduction to practice.

**RESPONSE**: Subject to rulings on claim construction, as well as further discovery, which may result in additional claims being asserted, CFLT asserts that claim 19 of the '213 Patent, claim 12 of the '681 Patent and claim 9 of the '680 Patent are all entitled, pursuant to 35 U.S.C. § 120, to an effective filing date of August 14, 1980, based on the disclosure provided by Application

Serial No. 06/178,107 ("the '107 application"), including, at least, Figure 1 (which depicts a compact fluorescent lamp ("CFL")), Figure 2 (which depicts a voltage-fed, series-resonant half-bridge inverter circuit capable of fitting within the compact base of the CFL depicted in Figure 1), Figure 3 (which provides waveforms associated with the circuit depicted in Figure 2), the abstract of disclosure and otherwise in the specification at: page 3, line 1 to page 5, line 3; page 5, line 18 to page 13, line 16; and page 17, line 2 to page 29, line 22. Further, in accordance with Fed. R. Civ. P. 33(d), answers to this Interrogatory may be ascertained from records already produced as CFLT 000151-008041.

CFLT is presently without information as a basis on which to assert earlier conception and/or actual reduction to practice dates, but reserves its right to do so should such information come to light.

Further, with respect to each patent-in-suit, CFLT responds as follows:

*'213 Patent*. CFLT contends that asserted claim 19 of the '213 Patent finds written description support at least in Figures 1-3, in the Abstract and otherwise in the specification at: column 1, line 52 to column 2, line 25; column 3, line 12 to column 6, line 43; and column 13, lines 38 to column 14, line 20 ("the Relevant '213 Disclosure").

In regards to the '213 Patent and its ancestry, the August 14, 1980 disclosure of the '107 application was repeated by way of file wrapper continuations filed on November 23, 1983 (Application Serial No. 06/555,426 ("the '426 application")), August 27, 1984 (Application Serial No. 06/644,155 ("the '155 application")) and October 15, 1985 (Application Serial No. 07/787,692 ("the '692 application")). The '107 application and subsequent file wrapper continuations possess all the substance of the Relevant '213 Disclosure.

10

On January 18, 1991, Nilssen filed Application Serial No. 07/643,023 ("the '023 application") as a continuation-in-part of the '692 application. To the extent that the '023 application may have added "new matter," it nevertheless continued to disclose substantively the same relevant teachings as the '107 application as illustrated, for example, in Figures 1-3. The '023 application possesses all the substance of the Relevant '213 Disclosure.

On July 22, 1991, Nilssen filed Application Serial No. 07/734,188 ("the '188 application") as a continuation-in-part of the '023 application. To the extent that the '188 application may have added "new matter," it nevertheless continued to disclose substantively the same relevant teachings as the '107 application as illustrated, for example, in Figures 1-3. The '188 application possesses all the substance of the Relevant '213 Disclosure.

On April 6, 1992, Nilssen filed Application Serial No. 07/864,044 ("the '044 application") as a continuation-in-part of the '188 application, which '044 application issued as the '213 Patent. To the extent that the '044 application may have added "new matter," it nevertheless continued to disclose substantively the same relevant teachings as the '107 application as illustrated, for example, in Figures 1-3. The '188 application possesses all the substance of the Relevant '213 Disclosure.

Thus, Figures 1-3, along with explanatory and related explanations of the Relevant '213 Disclosure have existed continuously through the ancestry of the '213 Patent to the extent that such ancestry dates back to the August 14, 1980 '107 application. If GE contends that the Relevant '213 Disclosure somehow fails to provide written description support for claim 19 of the '213 Patent, then it is GE's burden to prove as much, and not CFLT's burden affirmatively to prove that such written description support exists.

*'681 Patent*. CFLT contends that asserted claim 12 of the '681 Patent finds written description support at least in Figures 1-3, in the Abstract and otherwise in the specification at: column 1, line 36 to column 2, line 44; column 3, line 13 to column 6, line 44; column 18, line 64 to column 19, line 33; and column 21, lines 36 to 44 ("the Relevant '681 Disclosure").

In regards to the '681 Patent and its ancestry, the August 14, 1980 disclosure of the '107 application was repeated by way of file wrapper continuations filed on November 23, 1983 (the '426 application), August 27, 1984 (the '155 application), October 15, 1985 (the '692 application) and September 30, 1991 (Application Serial No. 07/768,105 ("the '105 application")). The '107 application and subsequent file wrapper continuations possess all the substance of the Relevant '681 Disclosure.

On October 3, 1991, Nilssen filed Application Serial No. 07/770,424 ("the '424 application") as a continuation-in-part of the '105 application. To the extent that the '424 application may have added "new matter," it nevertheless continued to disclose substantively the same relevant teachings as the '107 application as illustrated, for example, in Figures 1-3. The '424 application possesses all the substance of the Relevant '681 Disclosure.

On April 15, 1994, Nilssen filed Application Serial No. 08/227,999 ("the '999 application") as a file wrapper continuation of the '424 application, which '999 application issued as the '681 Patent. As a file wrapper continuation of the '424 application, the disclosure of the '424 application is the same as the disclosure of the '999 application, and thus, adds no "new matter." Accordingly, the '999 application possesses all the substance of the Relevant '681 Disclosure.

*'680 Patent*. CFLT contends that asserted claim 9 of the '680 Patent finds written description support at least in Figures 1-3, in the Abstract and otherwise in the specification at:

column 1, line 42 to column 2, line 29; and column 2, line 37 to column 6, line 58 ("the Relevant '680 Disclosure").

In regard to the '680 Patent and its ancestry, the August 14, 1980 disclosure of the '107 application was repeated by way of file wrapper continuations filed on November 23, 1983 (the '426 application), August 27, 1984 (the '155 application) and October 15, 1985 (the '692 application). The '107 application and subsequent file wrapper continuations possess all the substance of the Relevant '680 Disclosure.

On June 29, 1990, Nilssen filed Application Serial No. 07/546,267 ("the '267 application") as a continuation-in-part of the '692 application. To the extent that the '267 application may have added "new matter," it nevertheless continued to disclose substantively the same relevant teachings as the '107 application as illustrated, for example, in Figures 1-3. The '267 application possesses all the substance of the Relevant '680 Disclosure.

On August 22, 1991, Nilssen filed Application Serial No. 07/751,587 ("the '587 application") as a file wrapper continuation of the '267 application. As a file wrapper continuation of the '267 application, the disclosure of the '587 application is the same as the disclosure of the '267 application, and thus, adds no "new matter." Accordingly, the '587 application possesses all the substance of the Relevant '680 Disclosure.

On December 21, 1992, Nilssen filed Application Serial No. 07/993,628 ("the '628 application as a division of the '587 application, which '628 application issued as the '680 Patent. As a division of the '587 application, the disclosure of the '628 application adds no "new matter" to the disclosure provided by the '587 application. Accordingly, the '628 application possesses all the substance of the Relevant '680 Disclosure.

*     *     *

13

CFLT objects to this Interrogatory as premature, at least because it purports to require CFLT to formulate claim construction positions ahead of Court-imposed deadlines, and Defendant has yet to identify purportedly invalidating prior art that would post-date the asserted August 14, 1980 effective filing date for each claim.

Dated:  January 10, 2020

/s/ Megan C. Haney
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, GOLDMAN, MCLAUGHLIN
 & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware  19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Attorneys for Plaintiff*
*CFL Technologies LLC*

14

## CERTIFICATE OF SERVICE

      I, Megan C. Haney, hereby certify that on January 10, 2020, a copy of Plaintiff CFL Technologies First Supplemental LLC's Responses to Defendant General Electric Company's First Set of Interrogatories (Nos. 1-5) was caused to be served on the following as indicated below:

## VIA EMAIL

Daniel M. Silver
Alexandra M. Joyce
McCarter & English, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801
dsilver@mccarter.com
ajoyce@mccarter.com

Stephen J. Akerley
Adrian Kwan
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94014
SJAkerley@mintz.com
akwan@mintz.com

                              */s/Megan C. Haney*
                              Megan C. Haney (#5016)

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CFL TECHNOLOGIES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 18-1444-RGA |
| GENERAL ELECTRIC COMPANY and GE LIGHTING, LLC, | |
| Defendants. | |

**GENERAL ELECTRIC COMPANY'S OBJECTIONS AND RESPONSES TO CFL
TECHNOLOGIES LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-5)**

Defendant General Electric Company ("GE" or "Defendant"),[1] by and through its attorneys, hereby respond to Plaintiff CFL Technologies LLC's ("CFLT" or "Plaintiff") First Set of Interrogatories (Nos. 1-5) (collectively, the "Interrogatories") pursuant to Federal Rules of Civil Procedure 26 and 33 as follows:

**GENERAL OBJECTIONS**

1.      GE objects to the "INSTRUCTIONS" and "DEFINITIONS" contained in Plaintiff's Interrogatories to the extent they are inconsistent with or seek to impose obligations upon GE beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Default Standard for Discovery Including Discovery of Electronically Stored Information (the "Default Standard"), and the Local Rules of the United States District Court of Delaware (the "Local Rules").

2.      GE objects to the "INSTRUCTIONS" and "DEFINITIONS" contained in Plaintiff's Interrogatories as overly broad, unduly burdensome, oppressive, improper, and unreasonable in scope.

---

[1] GE Lighting, LLC was dissolved in 2016.

3.      GE objects to the "INSTRUCTIONS" and "DEFINITIONS" contained in Plaintiff's Interrogatories to the extent that they are vague, ambiguous, unintelligible, or fail to describe the information sought with reasonable particularity.  GE will give the terms of the Interrogatories their ordinary and plain meanings.

4.      GE objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest privilege, duty of confidentiality, or any other applicable privilege, immunity, doctrine, or protection.  Nothing in these objections and responses is intended to be or is a waiver of any attorney-client privilege, attorney work product immunity, or any other applicable privilege, immunity, doctrine or protection.

5.      GE objects to the Interrogatories to the extent they seek identification and production of information that is neither relevant to any party's claim or defense in this matter, nor proportional to the needs of this case.

6.      GE objects to the Interrogatories to the extent they seek information that cannot be found in the course of a reasonable search.  GE reserves the right to conduct further discovery, investigation, or analysis as to any issue raised by any Interrogatory and to supplement its response to any Interrogatory based on such further discovery, investigation, or analysis.

7.      GE objects to the Interrogatories to the extent the burden or expense of the discovery sought outweighs any likely benefit.

8.      GE objects to the Interrogatories as unduly burdensome to the extent they seek discovery that is unreasonably cumulative or duplicative.

ME1 31947106v.1

9.      GE objects to the Interrogatories to the extent they seek information already in Plaintiff's possession, custody, or control, or obtainable from some other source that is more convenient, less burdensome, or less expensive.

10.     GE objects to the Interrogatories to the extent they seek information outside of GE's possession, custody, or control.

11.     GE objects to the Interrogatories to the extent they are compound and/or are comprised of multiple subparts constituting more than one Interrogatory.

12.     No incidental or implied admissions are intended by any objection or response by GE to any Interrogatory.  That GE has objected or responded to any Interrogatory is not an admission that GE accepts or admits the existence of any alleged facts set forth in or assumed by such Interrogatory, or that any objection or response thereto constitutes admissible evidence.

13.     GE reserves the right to modify or supplement these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, Local Rules, any orders adopted in this case, or any other applicable law.

14.     GE makes these objections and responses subject to the reservation of all rights to object to the introduction into evidence, in this or any other action, any information provided upon grounds of competence, relevance, materiality, propriety, hearsay, and/or admissibility, or any other applicable ground.

15.     GE objects to the Interrogatories to the extent they call for a legal conclusion. Any responses to these Interrogatories shall not be construed as agreement with or admission of any legal conclusion concerning the meaning or application of any terms used in such Interrogatories.

ME1 31947106v.1

16.     GE objects to the Interrogatories to the extent they seek discovery for a period earlier than a six years prior to the filing date of this action.  The Default Standard in Delaware provides that discovery outside of the core technical document production "shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited."  Default Standard, 4(e).

## SPECIFIC OBJECTIONS - DEFINITIONS

17.     GE objects to the terms "Defendants" or "you" or "your" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  GE further objects to these terms as they impose an undue burden and cost on GE to perform a search of custodians and sources of information which are not likely to contain relevant information to any party's claims or defenses.  For example, CFLT's current definition would require GE to search all of its business units, regardless of whether they had any relation to the subject matter of the instant action.  In responding to these Interrogatories, GE understands the terms "Defendants" or "you" or "your" to mean GE's employees and its subsidiaries who were involved with the design, manufacture, offer for sale, or sale of compact fluorescent light bulbs between 2012 and 2014.  Moreover, GE objects to the terms "Defendants" or "you" or "your" to the extent it seeks information from GE Lighting, LLC as not proportional to the needs of the case, not relevant to any parties' claims or defenses, unduly burdensome, and expensive.  As noted in GE's Answer, GE Lighting, LLC was dissolved in 2016.

18.     GE objects to the term "person" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  GE understands the term "person" to mean a "natural person" or "corporate or business entity."

19.     GE objects to the term "document" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  The definition is vague and ambiguous because CFLT has not identified any "cases interpreting" any specific Federal Rule of Civil Procedure.  GE understands the term "document" to have its same meaning as used in Federal Rule of Civil Procedure 34.

20.     GE objects to the term "thing" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  The definition of "thing" is vague and ambiguous because CFLT has not identified any "cases interpreting" any specific Federal Rule of Civil Procedure.  GE understands the term "thing" to have its same meaning as used in Federal Rule of Civil Procedure 34.

21.     GE objects to the terms "compact fluorescent lamp" and "CFL" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  The definition of "compact fluorescent lamp" and "CFL" is vague and ambiguous because it contains structural terms that are open to interpretation such as "gas discharge lamp," "electronic ballast," or "connection [for] screw in lamp socket."  *See Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (rejecting identification of class of accused products as insufficient where plaintiff's identification does no more than "substantially mirror[] the claim language").  Moreover, the terms are vague and ambiguous because they contain qualifiers such as "ordinary utility source of AC power," "at least part of which … is adapted for connection," and "includes, but is not limited to."

22.     GE objects to the term "CFL Model" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  The term "CFL Model" incorporates the same defects found within the definition of "compact fluorescent lamp" and "CFL," and the term "CFL Model" is also vague and ambiguous because it contains, by reference, structural terms that are open to interpretation such as "gas discharge lamp," "electronic ballast," or "connection [for] screw in lamp socket."  *See Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018)

(rejecting identification of class of accused products as insufficient where plaintiff's identification does no more than "substantially mirror[] the claim language"). Moreover, the term "CFL Model" is also vague, ambiguous, and seeking discovery not proportional to the needs of the case because it refers to a "class of CFL products associated with a given internal or external name, sales code, product code, model number or other identifier." It is unclear if the term CFL Model refers to particular products or, more generally, types of products.

23. GE further objects to the terms "compact fluorescent lamp," "CFL," and "CFL Model" as vague, ambiguous, and seeking discovery not proportional to the needs of the case. *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 286 (D. Del. 2012). Any attempt to shift the burden is inappropriate. To date, Plaintiff has only identified a single accused product, GE Lighting 97134 Energy Smart Spiral CFL 23-Watt. In light of Plaintiff's failure to properly identify products that allegedly infringe the claims of the patents-in-suit, GE's understands the terms "compact fluorescent lamp," "CFL," and "CFL Model" to refer to the single accused product, GE Lighting 97134 Energy Smart Spiral CFL 23-Watt.

**SPECIFIC OBJECTIONS - INSTRUCTIONS**

24. GE objects to Plaintiff's instruction to "interview all of your past and present owners, officers, directors, agents and employees" as vague, ambiguous, and seeking discovery not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. GE will undertake a reasonable, good-faith, and proportional search to provide relevant, non-privileged information responsive to the Interrogatories within GE's possession, custody or control.

ME1 31947106v.1

25.     GE objects to Plaintiff's instruction to "identify … by title, type of document, date of document, author, [and] recipient" when referring to documents in response to an Interrogatory as imposing a burden greater than required by the Federal Rules of Civil Procedure and the Local Rules.  GE will comply with Federal Rule of Civil Procedure 33(d) when relying on the inspection of business records or electronically stored information ("ESI") to respond to the Interrogatories.

26.     GE objects to Plaintiff's instruction to "serve supplemental answers within thirty (30) days after acquiring such additional knowledge or information" as imposing a burden greater than required by the Federal Rules of Civil Procedure and the Local Rules.  GE will comply with Federal Rule of Civil Procedure 26(e) when supplementing its responses to the Interrogatories.

<u>**OBJECTIONS AND RESPONSES TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u>

State the complete bases for any contention that CFLT's claim for patent infringement damages against Defendants are limited by 35 U.S.C. § 287, including, but not limited to:

(a)     Identification of each unmarked product that is allegedly covered by any of the patents-in-suit and the date(s) any such products were allegedly sold;

(b)     The basis for Defendants' contention that each unmarked product was allegedly sold pursuant to a license (or other authorization) under any of the patents-in-suit;

(c)     Identification of each claim of the any of the patents-in-suit that allegedly covers each unmarked product;

(d)     A chart identifying specifically where each element of each identified claim of any of the patents-in-suit is found within each unmarked product, including for

each element that Defendants contends is governed by 35 U.S.C. § 112(f), a description of the claimed function of that element and the identity of the structure(s) in the unmarked product that allegedly perform the claimed function; and

(e)     Identification of whether each element of each asserted claim is claimed to be present in the unmarked product literally or under the doctrine of equivalents, and, if asserting coverage under the doctrine of equivalents, provide an explanation of each function, way and results that is equivalent and why any differences are not substantial.

## RESPONSE TO INTERROGATORY NO. 1:

GE objects to this Interrogatory as not proportional to the needs of the case as it seeks to shift the burden of proof of Plaintiff's compliance with 35 U.S.C. § 287 from Plaintiff to GE. Plaintiff solely bears the burden of proof as to Plaintiff's and its licensees compliance with 35 U.S.C. § 287(a). *See Artic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("We hold an alleged infringer who challenge the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar."). Plaintiff's discovery request here would impose its own burden of proof on GE. For the following reasons, this burden is inappropriate. *Id.*

First, Plaintiff has superior or equal access to the unmarked products as GE. Plaintiff is the successor-in-interest to the patents-in-suit and has several existing licenses with the third parties who produced and sold the unmarked products. Such licenses include obligations which require the licensee to work with the licensor, and to provide positions as to why a particular

[REDACTED]

unmarked product does not practice any claim within any of the patents-in-suit.   *See, e.g.*, CFLT000033-000044 at ¶41, § 8.3 [REDACTED]

[REDACTED]; CFLT000071-000084 at ¶76, § 2.11 [REDACTED]

[REDACTED]; CFLT000102-000137 at ¶108 [REDACTED]

[REDACTED].   GE has no such relationships with the third parties from which discovery is required, and, Plaintiff is currently or has previously engaged in arbitration agreements with Technical Consumer Products, Inc. ("TCP") and Philips Electronics North America Corp. ("Philips").   Further, Plaintiff is currently in arbitration with Philips and has apparently completed arbitration against TCP.   Moreover, forcing GE to seek documents from licensees who are also competitors to GE is burdensome and not proportional to the needs of the case.   Indeed, Philips and other licensees have additional interests in resisting discovery requests from GE.

Second, Plaintiff is likely to have or has access to existing documentation which would render this Interrogatory duplicative, at least in part.   *See, e.g.*, CFLT000058-70 at ¶62-63, § 4.1

[REDACTED]

[REDACTED]

[REDACTED] CFLT000091-101 at ¶95-96, § 4.1 [REDACTED]

[REDACTED]

CFLT000102-137 at ¶107, § 4.1 [REDACTED]   And, the term "[REDACTED]

[REDACTED]" is defined to include "[REDACTED]

[REDACTED]

10

██████████████████████████████████████

█████████████████████████████████████████████ " *See, e.g.*, CFLT0000091-101 at `91-92.

Third, the discovery sought would also be prohibitively expensive and unduly burdensome on GE.  It is incumbent upon Plaintiff who has already represented in its Complaint that it complied with § 287 and who also bears the ultimate burden of proving compliance with § 287 to undertake the costs of obtaining and analyzing the unmarked products.  Such products are, if still available, as equally available to Plaintiff as they are to GE.  Moreover, Plaintiff claims to already have samples of various CFLs within their possession, custody, or control.

Fourth, the discovery sought would be duplicative of existing analysis the licensees have already performed.  Plaintiff likely has analyses from its licensees, to the extent that any exist, regarding any contention as to whether the licensed products practiced or did not practice any claim of the patents-in-suit.  ███████████████████████████████████████
*See, e.g.*, CFLT000071-000084 at `76, § 2.11; CFLT000102-000137 at `108.

Fifth, the term "asserted claim" is vague and ambiguous.  Plaintiff has not identified the set of claims from the patents-in-suit which it is asserting against GE in this action.  Moreover, Plaintiff agreed to narrow the asserted claims to no more than 25 in its initial infringement contentions.  As such, GE cannot determine which claims Plaintiff is currently asserting.

GE also objects to this Interrogatory as containing multiple, distinct subparts which should be counted as separate interrogatories.  Specifically, each subpart (a)-(e) comprises a discrete subpart.  Subpart (a) seeks identification of each "unmarked product" that alleges practices any claim of the patents-in-suit.  Subpart (b) seeks the bases for GE's contention that each product "was sold pursuant to a license."  Subpart (c) requests a claim-by-claim infringement analysis as to each unmarked products.  Subpart (d) seeks a chart containing a

claim construction analysis for, at least, means-plus-function terms. Subpart (e) seeks an element-by-element doctrine of equivalents infringement analysis for unmarked products, and implicates GE's claim construction positions regarding, at least, prosecution history estoppel. GE, therefore, counts each of these subparts as a separate interrogatory, totaling 5 interrogatories.

Subject to and without waiving the aforementioned General and Specific Objections, GE responds to Interrogatory No. 1 as follows:

(a) Identification of each unmarked product that is allegedly covered by any of the patents-in-suit and the date(s) any such products were allegedly sold; and

| Philips Electronics North America Corp. ("Philips") | | | |
|---|---|---|---|
| Name | Model(s) | Date | Basis |
| Marathon Mini-Decorative Twister | 14792-6, 14793-4, *13804-0, 13991-5, 14786-8, 14787-6, *13363-7, *13581-4, *13805-7, 13713-3, *13715-8, 13946-9, 14788-4, 14789-2 | Products preceded with an asterisk were available at least as of 2004; the remaining products were available at least as of 2006 | Products offered for sale in Philips' Lamp Specification & Application Guide 2004; Philips' Lamp Specification & Application Guide 2006 |
| Marathon® Twister | 13948-5, 13947-7, *38110-3, *38111-1 | | |
| Marathon® Universal | 14691-0, 13077-3, 13574-9, *37104-7, *37105-4, *37108-8, *37109-6, *37114-6, *37115-3 | | |
| Marathon® Vanity Globe | 14413-9, *13072-4 | | |
| Marathon® Décor Globe | 14514-4, 14515-1, *328854-6, *38855-3 | | |
| Marathon® Reflector Flood | 13942-8, 13940-2, 13939-4, 14412-1, 13941-0, 13724-0, 13943-6, 13723-2, *13703-2 | | |
| Marathon® Flood | *38488-3, *38489-1 | | |
| Marathon® Dimmable Flood | *38488-3, *38489-1, 13707-5, 13708-3, | | |

12

| | 14644-9 | | |
|---|---|---|---|
| Marathon® Outdoor | 13786-9, 13952-7, 13578-0, *37118-7, *37119-5, *28781-3, *37123-7, *13578-0, *37152-5 | | |
| Marathon® Bug-A-Way | 37148-4, *37149-2, 14025-1 | | |
| Marathon® Soft White Plus | 13704-2, 14066-5, 13705-9, 14024-4 | | |
| Marathon® Candle | 14791-8, 14790-0, 13954-3, 13953-5, 14045-9, 14415-4 | | |
| Marathon® Table Lamp | *37082-5, *37084-1 | | |
| Marathon® 3-Way | 337219-3, 14042-6, 14416-2, *37216-9, *37219-3, | | |
| Marathon® Dimmable | 14645-6, 14646-4, *37202-9 | | |
| Marathon® Household | *37096-5 | | |
| Marathon® Mini-Household | *13070-8 | | |
| EnergySaver T2 Mini Twister | 41398-8, 41399-6, 41402-9, 41403-7, 41404-5, 41400-3, 41401-1, 41405-2, 41406-0, 41407-8, 41410-2, 41408-6, 41409-4 | Products on sale at least as of 2013 | Products offered for sale in Philips' Lamp Specification Guide 2013 |
| EnergySaver Twister | 14792-6, 15639-8, 42470-5, 13948-5, 42752-6, 43176-7, 43234-4 | | |
| EnergySaver Twister Dimmable | 42002-6, 42003-4, 40715-5 | | |
| EnergySaver Twister GU24 | 41723-8, 41138-9, 41724-6, 41177-7, 41725-3, 41139-7 | | |
| EnergySaver Twister 3-Way | 21193-8 | | |
| EnergySaver A-Shape | 41736-0, 41737-8, 20080-8 | | |
| EnergySaver Reflector | 42682-5, 42753-4, 15703-2, 40620-7, | | |

13

| | 40621-5, 41863-2, 41862-4, 15702-4, 42120-6, 41995-1, 41678-4, 15716-4, 22791-8, 40892-2 | | |
|---|---|---|---|
| EnergySaver Dimmable Reflector | 41997-7, 41999-3, 42001-8 | | |
| EnergySaver Fan | 41747-7 | | |
| EnergySaver Candle | 42230-3, 42229-5, 41741-0, 41744-4 | | |
| EnergySaver Globe | 41735-2, 42787-2, 21106-0, 21107-8 | | |
| EnergySaver Outdoor | 40778-3 | | |
| EnergySaver Universal | 14691-0, 13077-3, 13574-9 | | |
| EnergySaver TuffGuard | 13578-0 | | |
| Technical Consumer Products, Inc. ("TCP") | | | |
| Name | Model(s) | Date | Basis |
| Mini SpringLamp® CFL, 189 Mini | 18907, 18909, 18911, 18914, 18919, 18923M | Products on sale at least as of 2006 | Products offered for sale on online catalog for  as of March 20, 2006 |
| Mini Mini SpringLamp® CFL, 189 Mini Mini | 18902, 18902C, 18902T, 18902TC, 18904, 18904C, 18904T, 18904TC | | |
| Mini SpringLamp® CFL, 289 Mini | 28909, 28913, 28918, 28923; | | |
| Mini Mini SpringLamp® CFL, 289 Mini Mini | 28902, 28902C, 28902T, 28902TC, 28904, 28904C, 28904T, 28904TC | | |
| SpringLamp® CFL, 289 Series | 28927, 28932, 28942 | | |
| SpringLamp® CFL, 280 Series | 28009, 28013, 28018, 28023, 28027 | | |
| SpringLamp® CFL, 182 Series | 18214, 18219, 18209, 18211, 18215, 18220, 18223, 18227 | | |
| 2-Piece SpringLamp® CFL, 159 Series | 15909LM, 15911LM, 15909L, 15911L, 15915L, 15918L, 15823L, 15926L, 15932L | | |

███████████████████████████████████

| | | | |
|---|---|---|---|
| 2-Piece SpringLamp® CFL, 160 Series | 16009LM, 16011LM, 16009L, 16011LM, 16014LM, 16009L, 19011L, 16015L, 16018L, 16023L, 16026L | | |
| 2-Piece SpringLamp® CFL, 161 Series | 16109L, 16111L, 16115L, 16120L | | |
| Fresh2 Ti SpringLamp® CFL, F2 Series | 28914F2, 28923F2, 11314F2 | | |
| 3 Way SpringLamp® CFL, 190 Series | *19032 | | |
| SpringLamp® CFL, 101 Series | 10109, 10111, 10115, 10120 | | |
| SpringLamp® Inside, 113 Series | 11304, 11309, 11314, 11314Y, 11316, 11319 | | |
| SpringLamp® CFL, 189 Series | 18915, 18920, 18923, 18927, 18932, 18942 | Products on sale at least as of 2004 | Products offered for sale on online catalog for  as of March 27, 2004; |
| SpringLamp® CFL, 180 Series | 18009, 18011, 18015, 18020, 18023 ,18027 | | |
| SpringLamp® CFL, 182 Series | 18214, 18219, 18209, 18211, 18215, 18220, 18223, 18227 | | |
| SpringLamp® CFL, 188 Series | 18814, 18815, 18820, 18823, 18825 | | |
| 3 way SpringLamp® CFL, 190 Series | 19032 | | |
| Dimmable SpringLamp® 101 | 10109, 10111, 10115, 10120 | | |
| Mini SpringLamp® CFL, 189 Mini | 18907, 18909, 18911, 18914, 18919, 18923M | | |
| Mini SpringLamp® CFL, 189 Mini Mini | 18902, 18902C, 18902T, 18902TC, 18904, 18904C, 18904T, 18904TC | | |
| SpringLamp Series | 489, 401, 501, 28968(H)(277), GU, 289, 182, 4T2, 48913, 48923, 48927[2] | Products on sale at least as of 2013 | Products offered for sale in TCP 2013 Catalog Lamps Ballasts Fixtures |

---

[2] These series of products were listed for sale in the TCP 2013 Catalog Lamps Ballasts Fixtures. Please note that this cell contains families of products, and not individual model numbers.

| TCP Pro Series T3 Full SpringLamps | 48909, 48909C, 48913, 48913C, 48918, 48923, 48927, 48932, 48942 | | |
|---|---|---|---|
| TCP pro Series T2 Full SpringLamps | 4T209, 4T213, 4T213C, 4T218, 4T223 | | |
| TCP pro Series Dimmable Full SpringLamps | 40114, 40123 | | |
| TCP Pro Series Dimmable Covered Lamps | 2R3016DM | | |
| TCP Pro Series TruDim Dimmable Covered Lamps | 50123, 4R2014TD, 4R3016TD, 4R4016TD, 4R4020TD, 41315TD, 41316TD, 4G2515TD, 4G4015TD | | |
| TCP Pro Series TruStart | 58009, 58014, 58018, 58023, 58027, 58032, 58042 | | |
| Aero-Tech Light Bulb Co., Inc. ("Aero-Tech") | | | |
| Name | Model(s) | Date | Basis |
| Evolution | *AE4-11W | On sale at least as of 2012; Products preceded with an asterisk were on sale as of 2008 | Products offered for sale in Aero-Tech's online product catalog as archived in October, 2012; Products identified as EnergyStar certified as of December 27, 2008 |
| Evolution | *AE4B-14W | | |
| Evolution | *AE4-20W | | |
| Evolution | *AE5-25W | | |
| Evolution | AE4B/CA-11W | | |
| Evolution | AE5B/CA-14W | | |
| Evolution | FS4-11W | | |
| Evolution | FS4-14W | | |
| Evolution | FS4-20W | | |
| Evolution | FS4B/CA-11W | | |
| Evolution | FS5B/CA-14W | | |
| Evolution | *FS4B-11W | | |
| Evolution | *FS4B-14W | | |
| Evolution | *FS4B-20W | | |

(b) The basis for Defendants' contention that each unmarked product was allegedly sold pursuant to a license (or other authorization) under any of the patents-in-suit.

GE contends that Nilssen licensed each of the patents-in-suit to Philips, TCP, and Aero-Tech (collectively, the "Licensees"). On January 1, 2000, Nilssen first granted an exclusive license to Geo Foundations, Ltd. ("Geo") to, among other patents, U.S. Patent Nos. 5,510,680

16

███████████████████████████████████████████████

(the "'680 Patent") and 5,510,681 (the "'681 Patent").  CFLT000001-13 at `9, Ex. A, ll. 36-37.

On January 1, 2001, Nilssen and Geo amended this exclusive license, including broadening the

definition of the term "Licensed Patents."  On January 1, 2004 Nilssen and Geo again amended

the exclusive license to explicitly include U.S. Patent No. 6,459,213 (the "'213 Patent").

CFLT000014-32 at `26, Ex. A, ll. 4.

████████████████████████████████████████████. *See* CFLT000033-44;

CFLT000045-57; CFLT000071-84. ████████████████████████████

████████████████████████ *See, e.g.*, CFLT000045-46. ████████████

██████████████████████████████████████████████████

████████████████████████████ *Id.* ████████████████ *See, e.g.,*

*id.* at `47, § 2.1. ██████████████████████████████████████

██████████████████████ CFLT000085-86.   And, Nilssen accused TCP's products of

infringing at least one claim of each of the '680 and '681 Patents during that litigation.  *Nilssen*

*v. Technical Consumer Products, Inc.*, Case No. 9:03-cv-80548-DTKH, ECF No. 1 (S.D. Fla.

June 17, 2003). ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████ CFLT000150.

As noted in Section (a) above, TCP sold CFL products between 2004 and 2006,

continuing until at least 2013. *See infra*. ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

TCP and Geo also executed a separate Licensee Agreement on February 24, 2006 granting TCP the right to sub-license Philips. CFLT000138-140 at `138. ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. *See* CFL000071-84 at `71; *see also Nilssen, et al. v. Wal-Mart Stores Inc., et al.*, Case No. 1:04-cv-05363 (N.D. Ill.). Philips sold CFL products between 2004 and 2006, continuing until at least 2013. *See infra.* And, Philips is currently engaged in arbitration with CFLT.

████████████████████████████████████████████████████

CFLT000102-137 at `113-114. ██████████████████████ *Id.* at '102. ████████

████████████████████████████████████████████████ *Id.* at '102, § 1.3. ██████████████████████████████████████████████████

██████████████████ *See infra.*

GE is prejudiced by the extreme delay in Plaintiff's filing of the instant action, and many of the unmarked products now sold are unavailable. GE is still investigating the products and manufacturers who have produced CFL products under a license to the patents-in-suit. GE will supplement its responses to this Interrogatory pursuant to Fed. R. Civ. P. 26(e) if and when it discovers new and relevant information.

Pursuant to the objections described above, GE will not be providing a response to subsections (c), (d), and (e) to this Interrogatory. GE is willing to meet and confer with Plaintiff regarding these subsections to Interrogatory No. 1.

**INTERROGATORY NO. 2:**

Identify each of Defendants' past and present owners, officers, directors, employees or outside consultants who had supervisory responsibility for the development, engineering, designing, testing, manufacturing, maintaining quality control, marketing, supplying, acquisition or selling of CFLs sold by Defendants since April 23, 1994.

**RESPONSE TO INTERROGATORY NO. 2:**

GE objects to this Interrogatory as vague, ambiguous, and seeking discovery not proportional to the needs of the case. As objected to above, the definition of "CFL" is vague and ambiguous because it contains structural terms that are open to interpretation such as "gas discharge lamp," "electronic ballast," or "connection [for] screw in lamp socket." Moreover, the term "CFL" is vague and ambiguous because it contains qualifiers such as "ordinary utility source of AC power," "at least part of which … is adapted for connection," and "includes, but is not limited to." For the purposes of this Interrogatory, GE understands the terms "CFL" or "CFLs" mean the single named product in Plaintiff's Complaint and Initial Disclosures, GE Lighting 97134 Energy Smart Spiral CFL 23-Watt.

GE further objects to this Interrogatory as not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. This Interrogatory seeks an identification of "each of Defendants'

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| CFL TECHNOLOGIES LLC,<br><br>              Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and<br>GE LIGHTING, LLC,<br><br>              Defendants. | C.A. No. 18-1444-RGA |

**[PROPOSED] ORDER**

With respect to the issue raised by Defendant General Electric Company ("GE") at the February 3, 2020 discovery conference, and after review of GE's January 23, 2020 letter and Plaintiff CFL Technologies' response, IT IS HEREBY ORDERED as follows:

**Interrogatory Responses**.  Plaintiff CFL Technologies ("CFLT") is hereby ordered to supplement its response to GE Interrogatory No. 4 within twenty-one days of the date of this order.  The supplemental responses shall: (1) identify the claims of U.S. Patent Nos. 5,510,681 and 5,510,680 (collectively, the "Asserted Patents") that are practiced by one or more of the Aero-Tech products GE identified as "Licensed Products" as that term is defined in GE's First Set of Interrogatories to CFLT or identify on a claim-by-claim and element-by-element basis each claim element CFLT contends is not present in the Aero-Tech products literally or under the doctrine of equivalents and the bases for each such contention; and (2) identify the claims of the Asserted Patents that are practiced by the CFL products TCP and Philips sold between August 10, 2004 and January 23, 2008.

IT IS SO ORDERED this _____ day of _____ 2020.

_____
The Honorable Richard G. Andrews
United States District Court Judge

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on January 23, 2020 on the following counsel in the manner indicated:

### <u>VIA EMAIL</u>:

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pgmhlaw.com
mch@pgmhlaw.com

William W. Flachsbart
Jonathan Hill
Robert P. Greenspoon
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Avenue, 27th Floor
Chicago, IL 60601-3901
wwf@fg-law.com
jh@fg-law.com
rpg@fg-law.com

*Attorneys for Plaintiff CFL Technologies, LLC*

Dated:  January 23, 2020

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)