IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CFL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>GENERAL ELECTRIC COMPANY and<br>GE LIGHTING, LLC,<br><br>      Defendants. | C.A. No. 18-1444-RGA<br><br>**REDACTED - PUBLIC VERSION** |

## LETTER TO THE HONORABLE RICHARD G. ANDREWS
## FROM JOHN C. PHILLIPS, JR.

Dated: January 27, 2020

                                John C. Phillips, Jr. (No. 110)
                                Megan C. Haney (No. 5016)
                                PHILLIPS, GOLDMAN, MCLAUGHLIN &
                                HALL, P.A.
                                1200 North Broom Street
                                Wilmington, Delaware 19806
                                Telephone: (302) 655-4200
                                jcp@pgmhlaw.com
                                mch@pgmhlaw.com

                                *Attorneys for Plaintiff*

Dear Judge Andrews:

Plaintiff CFL Technologies LLC ("CFLT") hereby responds to Defendants General Electric Company and GE Lighting, LLC's (collectively, "GE") January 23, 2020 letter ("Letter," D.I. 45). Because the discovery sought by the Letter is irrelevant in the context of other discovery provided to GE, and would impose disproportionate and undue burden on CFLT, CFLT respectfully requests that the Court deny GE's request.

The central issue raised in GE's Letter is the effect of 35 U.S.C. § 287(a) (the "Marking Statute"), which, in some cases, limits damages based on a failure to provide notice of infringement to parties accused of infringement. Notice may be accomplished in either of two ways. First, constructive notice is achieved if the patentee (or its licensee(s)) marks patented products with the number of the applicable patents. *See* 35 U.S.C. § 287(a). Second, actual notice is achieved where the patentee accuses the infringer of infringement of the relevant patents. *See id*. Under the Marking Statute, the "[f]iling of an action for infringement shall constitute such notice." *Id*. If unmarked patented products have been sold by the patentee (or its licensee(s)), any infringement during the time period preceding constructive or actual notice will not accrue damages. *See id*.

In this case, CFLT freely disclosed in an interrogatory answer that the prior owner of the patents-in-suit authorized licensees TCP and Philips to sell unmarked products covered by each of the patents-in-suit.[1] As such, the parties are in agreement that, under law espoused by several district courts, CFLT may not collect any damages for infringement preceding the time that GE received actual notice of infringement. But it is an undisputed historical fact, subject to judicial notice, that a suit filed against GE in 2006 accused GE CFLs of infringing the patents-in-suit. (*See* D.I. 1 at ¶ 22.) This constitutes actual notice under the Marking Statute beginning in 2006. GE disagrees with that *legal* position, for reasons addressed in detail below. But the fundamental point is that CFLT concedes that, under district court interpretations of § 287, it may not collect damages based on constructive notice. That is, once CFLT conceded facts regarding licensees TCP and Philips, conceding any one (or two, or ten, or 100) additional non-marking licensees under the patents-in-suit would not alter the "constructive notice" legal analysis one iota.

Here, GE demands that CFLT investigate and explain why "hundreds of products sold by Aero-Tech"[2] (another agreement signatory beyond TCP and Philips) are not covered by the patents-in-suit. (D.I. 45 at 2.) But, there is no dispute anyway that damages are not available during the pendency of sales of licensed, covered products, until such time as GE received actual notice of infringing the patents-in-suit. In particular, CFLT does not dispute that both TCP and Philips

---

[1] GE contends that CFLT "delay[ed]" admitting that products sold by licensees were not marked. (D.I. 45 at 1.) In fact, CFLT candidly admitted in its *initial* response to GE's Interrogatory No. 3 that "CFLT is unaware of any product having been marked with any number of any of the patents-in-suit." (Ex. A at 7.) And, whether a "delay" occurred at this early discovery stage with respect to answers CFLT served does not bear on whether the Court should compel *additional* answers.

[2] In reality, GE stated model numbers of only 14 Aero-Tech products in its November 12, 2019 Response to CFLT's Interrogatory. (Ex. B at 16.)

sold licensed, unmarked products covered by the patents-in-suit. (D.I. 45-1 at 7-9.) [3] Thus, it makes no difference whatsoever if Aero-Tech *also* sold licensed, unmarked products covered by the patents-in-suit. In other words, resolution of the issue whether Aero-Tech products are *also* covered changes nothing. The issue is irrelevant.

Moreover, GE's demand for discovery is without a legally-required burden-shifting predicate. As GE itself recognizes, it bore the initial burden of identifying "'specific unmarked products which the alleged infringer *believes* practice the patent.'" (D.I. 45 at 2 (emphasis added, quoting *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).) Unless and until GE articulates such a *belief*, the burden does not shift to CFLT to establish the absence of patent coverage. *See Arctic Cat*, 786 F.3d at 1368. In that regard, GE has refused to respond to CFLT's Interrogatory No. 1(c) requesting "[i]dentification of each claim of the [*sic*] any of the patents-in-suit that allegedly covers each unmarked product." (*Compare* Ex. C at 8 *with* Ex. B at 19.) Further, GE has not even obtained samples of Aero-Tech products. (*See* Ex. D at 2 (Dec. 17, 2019 letter from P. Ducker to W. Flachsbart).) Nor has GE provided evidence that Aero-Tech met a requirement to pay royalties before any license rights attached. Thus, even if the status of Aero-Tech products were relevant (and it is not), GE has not yet met its initial burden of articulating a belief that patent claims allegedly cover Aero-Tech products that achieved "licensed" status under the agreement.[4]

Finally, GE's motion to compel raises the substantive legal argument that the 2006 lawsuit accusing GE of infringing the patents-in-suit does not constitute notice that GE infringes the patents-in-suit. (D.I. 45 at 3.) As an initial matter, even if GE were correct in its extraordinary contention that an action is not an action (GE is wrong, since it cites no case announcing such a holding), nothing changes. Either GE was given notice of infringement by the 2006 lawsuit or it was not. GE may seek to try this issue before the jury under its desired jury instructions, but that is not a discovery issue. The legal question is simply not ripe, nor germane to what constitutes a proper discovery response.

---

[3] GE raises for the first time in its letter the hypothetical prospect that CFLT might try to argue that only unasserted claims cover the TCP and Philips products, and that marking therefore does not apply on a patent-by-patent basis, such that CFLT somehow avoids the effects of the Marking Statute. (*See* D.I. 45 at 1, 2.) Had GE raised this issue with CFLT during meet-and-confer discussions (and it did not), CFLT would have confirmed, as it does here, that the Marking Statute applies on a patent-by-patent basis for this case as a result of unmarked licensed products sold by TCP and Philips.

[4] In effect, GE demands that CFLT explain why 32 claims of the '680 patent and 17 claims of the '681 patent do not cover 14 Aero-Tech products identified by GE. Put another way, GE demands that CFLT conduct 686 infringement analyses to prove or disprove a GE argument: whether or not all claims of the patents-in-suit (whether or not asserted) cover Aero-Tech products. Without electrical schematics and a bill of materials, it takes substantial effort to acquire product samples, break them down, reverse engineer the circuits and take waveform measurements to confirm (or refute) coverage by claims of the patents-in-suit. Thus, even if GE could pass the relevancy test for entitlement to discovery, it would fail the proportionality and undue burden tests.

In any case, GE is wrong that the dismissal with prejudice of the prior GE Litigation operates as an adjudication of non-infringement for after-occurring infringer activities (even if such adjudication could make "an action" not "an action"). (*See* D.I. 45 at 3) This Court ruled as much in a case involving the same patents: "Defendants are not adjudged noninfringers, regardless of the fact that Plaintiff's cases were dismissed with prejudice." (Ex. E at 8.) In doing so, it found unpersuasive the case cited by GE, *Molinaro v. AT&T Co.*, 460 F. Supp. 671 (E.D. Pa. 1978), in light of later Federal Circuit authority. (Ex. E at 8, n. 3.) Even on the facts of *Molinaro*, there was no statement that a "dismissal with prejudice is an adjudged finding of non-infringement." The case did not remotely concern nullification of a prior notice of infringement, nor did it equate a generic dismissal with prejudice with a finding of non-infringement.[5]

The Federal Circuit has also held that clear statutory language regarding the legal effect of service of a complaint is not negated just because the complaint is later dismissed without prejudice. *Click-To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1336 (Fed. Cir. 2018) (*en banc*), cert granted on other grounds *sub nom Dex Media v. Click-To-Call*, 2019 U.S. LEXIS 4270 (June 24, 2019). This conclusion follows even more strongly when statutory language governs the effect of "filing" (rather than service) of an action, and a later dismissal is "with" (versus without) prejudice. *Cf. Pecorino v. Vultec Corp.*, 6 F. Supp. 3d 217, 222-23 (E.D.N.Y. 2013) (dismissal of complaint without prejudice does not extinguish notice of infringement for laches purposes). For example, a dismissal without prejudice is subject to an argument that it made the action retrospectively a nullity, whereas a dismissal with prejudice is not subject to the same argument. Consequently, GE's contention conflicts with the statute, and is irrelevant anyway to GE's present discovery demands.

GE also is wrong to suggest that a product-specific charge of infringement must name all model designations of such products, including future ones, to constitute legal notice. GE's reference to *Arlington Industries, Inc. v. Bridgeport Fitting, Inc.*, 610 F. Supp. 370 (M.D. Pa. 2009), is unpersuasive since that court did not have the benefit of *Funai Elec. Co, Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010), which permitted the jury to determine disputes over whether actual notice for one model sufficed to cover others identified during discovery. *See also Novo Nordisk A/S v. Becton Dickinson & Co.*, 96 F. Supp. 2d 309, 320 (S.D.N.Y. 2000) ("notice given . . . to a merely related product class . . . may be sufficient and the question of adequate notice must go to the jury.").

Finally, although CFLT admitted that the items currently accused of infringement were not in existence at the time of the prior lawsuit, that is no concession that the product designs were materially different.

For the foregoing reasons, CFLT respectfully requests that the Court sustain its objections to GE's irrelevant, disproportionate, and unduly burdensome request, as GE seeks costly additional investigations about constructive notice that have no bearing on any issue in this case.

---

[5] Similarly, although counsel for Nilssen in the prior GE litigation acknowledged that the case had to be dismissed because of inequitable conduct findings in another case, that in no way concedes that GE products somehow are not covered by the claims of any patent.

3

                                      Respectfully submitted,

                                      */s/ John C. Phillips, Jr.*

                                      John C. Phillips, Jr. (No. 110)

cc:     All counsel of record (via CM/ECF & email)