IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CFL TECHNOLOGIES LLC,

Plaintiff,

v.

GENERAL ELECTRIC COMPANY
and GE LIGHTING, LLC,

Defendants.

Civil Action No. 18-1444-RGA

CFL TECHNOLOGIES LLC,

Plaintiff,

v.

OSRAM SYLVANIA, INC.,
and LEDVANCE, LLC,

Defendants.

Civil Action No. 18-1445-RGA

## MEMORANDUM OPINION

William W. Flachsbart (argued), Robert P. Greenspoon, Jonathon Hill, FLACHSBART & GREENSPOON, LLC, Chicago, IL; Megan C. Haney, PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington, DE, attorneys for Plaintiff.

Matthew Hurley (argued), MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C., Boston, MA; Adrian Kwan, Rose S. Whelan, Frank Pietrantonio, MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C., San Francisco, CA; Daniel M. Silver, Alexandra M. Joyce, McCARTER & ENGLISH LLP, Wilmington, DE, attorneys for Defendant General Electric.

Kevin P. Martin (argued), Srikanth K. Reddy, Christie Larochelle, GOODWIN PROCTER LLP, Washington DC; Nathan R. Hoeschen, SHAW KELLER, LLP, Wilmington, DE, attorneys for Defendants Osram and Ledvance.

March 23, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me are GE Defendants' two motions for Summary Judgment, one regarding marking pursuant to 35 U.S.C. § 287(a) (D.I. 62)[1] and one regarding the *Kessler* doctrine (D.I. 80), and the Osram Sylvania and Ledvance (together, "Osram") Defendants' motion for Summary Judgment regarding the *Kessler* doctrine (D.I. 71).[2]  Oral argument was held on March 3, 2021 (D.I. 91; D.I. 84[3] [hereinafter, "Tr."]), and I have considered the parties' briefs and supplemental materials. (D.I. 63, 65, 66, 68, 69, 81, 82, 84, 87, 90; D.I. 72, 74, 76, 79, 82, 83). For the reasons set forth below, GE's motion regarding the *Kessler* doctrine is GRANTED-in-part, Osram's motion regarding the *Kessler* doctrine is GRANTED-in-part and DENIED-in-part, and GE's motion regarding marking pursuant to 35 U.S.C. § 287(a) is DENIED.

## I.  BACKGROUND

Plaintiff's predecessor-in-interest Ole K. Nilssen and licensee Geo Foundation originally sued the Osram Defendants for infringement of twenty-six patents, including U.S. Patent Nos. 5,510,681 (the "'681 patent") and 5,510,680 (the "'680 patent") in this District on August 1, 2000 ("OSRAM I").  (18-1445 D.I. 72 at 3).   OSRAM I was subsequently transferred to the Northern District of Illinois, and on July 5, 2006 the '681 and '680 patents were determined to be unenforceable due to inequitable conduct.  *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884, 889 (N.D. Ill. 2006), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007). The court's unenforceability finding as to the '680 and '681 patents was based on Nilssen: (1) failing to pay large entity maintenance

---

[1] When discussing the GE motions, citations to docket items without a civil action no. refer to the docket in C.A. No. 18-1444.

[2] When discussing the Osram motion, citations to docket items without a civil action no. refer to the docket in C.A. No. 18-1445.

[3] When discussing arguments applicable to both cases, citations to docket items refer to the dockets in C.A. No. 18-1444 followed by the docket in C.A. No. 18-1445.

fees; (2) improperly including a March 20, 1978 patent in the ancestry of the asserted patents; (3) failing to disclose ongoing litigation with Motorola; and (4) as to the '681 patent, failing to disclose known prior art that he had disclosed in other pending applications.  Osram, 440 F. Supp. 2d at 902-11.

On August 1, 2006, Nilssen and Geo filed suit against GE in the Northern District of Illinois asserting infringement of the '681 and '680 patents ("GE I").  (18-1444 D.I. 63 at 3). The "GE I infringement allegations were premised on the hypothetical reversal" of OSRAM I on appeal, which suit Nilssen and Geo successfully moved to stay immediately after filing.  (*Id.*)  In 2008, after unsuccessfully exhausting all appeals in OSRAM I, Nilssen and Geo dismissed the GE I complaint with prejudice.  (*Id.* at 5, D.I. 63-1 Ex. 10 12:2-14, 17:11).

On May 2, 2003, Nilssen filed a separate action asserting sixteen additional patents, including U.S. Patent No. 6,172,464 ("the "'464 patent") and 5,757,140 (the "'140 patent") in the Northern District of Illinois against Osram ("OSRAM II").[4]  (18-1445 D.I. 72 at 4-5, D.I. 74 at 4).  Nilssen subsequently narrowed the case, leaving only two asserted patents in OSRAM II, not including the '464 and '140 patents.  (18-1445 D.I. 72 at 5, D.I. 73-4 Ex. 4 at 7).  Over the latter half of 2005, Nilssen withdrew first one and then the other of the two remaining patents-in-suit. (D.I. 74-10 Ex. 11 at 2; D.I. 74-11 Ex. 12).  On September 27, 2005, the OSRAM II court then dismissed the entirety of the complaint, and the parties debate whether this was done with or without prejudice.  (*See* D.I. 74-12 Ex. 13; *compare* D.I. 72 at 5 *with* D.I. 74 at 5).

In the following ten years, Plaintiff acquired the '681, '680, '464, and '140 patents and on September 17, 2018 brought the instant actions against GE and Osram, alleging infringement

---

[4] Osram refers to the Federal Circuit appeal of OSRAM I as "OSRAM II."  However, other filings refer to the later-brought district court proceedings in the Northern District of Illinois as "OSRAM II," and I will use that nomenclature.

3

of the '681 and '680 patents against GE and alleging infringement of the'681, '680, '464, and

'140 patents against Osram.  (18-1444 D.I. 1; 18-1445 D.I. 1).[5]  All the patents had expired at the

time the suits were filed.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the claims in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  The burden on the

moving party may be discharged by pointing out to the district court that there is an absence of

evidence supporting the non-moving party's case.  *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue

for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986);

*Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 460-61 (3d Cir. 1989).  A non-moving

party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials; or (B) showing that the materials cited [by the opposing party] do not establish

---

[5] The two suits also alleged infringement of the '213 patent but those claims have been dismissed
with prejudice.  (D.I. 44; D.I. 56).

the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's

evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the

court) than a preponderance." *Williams*, 891 F.2d at 461.

When determining whether a genuine issue of material fact exists, the court must view

the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007).  If the non-moving party fails to make a sufficient showing on

an essential element of its case with respect to which it has the burden of proof, the moving party

is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III.  DISCUSSION

### A.       The *Kessler* Doctrine

The Supreme Court created the *Kessler* doctrine in recognition that, in prevailing against

an earlier suit for patent infringement, a manufacturer received a right "to continue the business

of manufacturing and selling throughout the United States the same [product] he had theretofore

been manufacturing and selling, without molestation by [the patentee], through [its] patent."

*Kessler v. Eldred*, 206 U.S. 285, 287 (1907).  The *Kessler* doctrine precludes a patentee from

bringing new claims for infringement of previously litigated patents against the same or

"essentially the same" products sold after the date of an earlier judgment. *Brain Life, LLC v.

Elekta Inc.*, 746 F.3d 1045, 1057 (2014) (quoting *Foster v. Hallco Mfg. Co.* 947 F.2d 469, 479-

80 (Fed. Cir. 1991).  The *Kessler* doctrine serves as a "necessary supplement to issue and claim

preclusion" to stop "follow-on suits against customers [that] could destroy the manufacturer's

judgment right." *Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015).

In particular, the *Kessler* doctrine grants a defendant "a limited trade right to continue producing,

using, and selling [the product at issue] without further harassment from [plaintiff]." *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020).

While the Federal Circuit had earlier described the *Kessler* doctrine as applying to "an adjudged non-infringer," it recently clarified that its prior holdings do not "limit[] *Kessler* to requiring that the issue of noninfringement or invalidity be 'actually litigated[.]'" *Id.* at 1377. Instead, a "stipulated dismissal with prejudice" in an earlier case "operate[s] as an adjudication of non-liability for infringement for purposes of invoking the *Kessler* doctrine," and "confer[s] upon [defendant] a limited trade right to continue producing, using, and selling [the product] without further harassment from [the patentee], either directly or through suits against [defendant's] customers for using that product." *Id.* at 1379.

### 1.      '681 and '680 Patents Asserted against GE

Plaintiff's predecessor-in-interest previously asserted the '681 and '680 patents against GE in GE I.  There is no dispute that GE I and its assertions of infringement of the '681 and '680 patents were dismissed with prejudice.  (D.I. 81 at 7-8, D.I. 81-1 Ex. C 12:2-14, 17:11; D.I. 82 at 6).  In GE I, Plaintiff alleged infringement of the '681 and '680 patents through GE's making, selling, offering for sale, and/or importation of "self ballasted compact fluorescent lamps." (D.I. 81-1 Ex. A at ¶¶ 14 (sic), 16 & 19).  In the present suit, Plaintiff alleges infringement of those patents through GE's making, using, distributing, selling, offering for sale, and importing "screw-in compact fluorescent lamps."  (D.I. 1 at ¶¶ 4, 20-21).

GE argues that the *Kessler* doctrine bars Plaintiff from bringing an action for patent infringement against the same or "essentially the same" products sold after the date of dismissal of GE I.  (D.I. 81 at 7-8).  Plaintiff contends that the *Kessler* doctrine should not be applied because *Kessler* exists as an equitable remedy for pre-existing substantive rights. (D.I. 82 at 7-

11; Tr. 29:18-36:15).  Plaintiff argues using the *Kessler* doctrine would "extend such use of equity beyond the facts of Federal Circuit holdings."  (*Id.* at 11).  In view of *PersonalWeb*, which was decided after Plaintiff filed the instant litigation, Plaintiff asserts three reasons why the *Kessler* doctrine does not bar assertion of the '681 or '680 patents.  First, Plaintiff asserts that the post-*Therasense* change in law to inequitable conduct results in a change in circumstance after the GE I judgment, akin to the post-judgment change in circumstance following the termination of a license in *Mentor Graphics v. EVE-USA, Inc*., 851 F.3d 1275 (Fed. Cir. 2007).  Second, Plaintiff argues GE wrongly attempts to displace issue preclusion, arguing that issue preclusion and its change in law exception would be more apt because "[t]he foundational need of *Kessler* is absent here—a need for equity to enforce a preexisting legal preclusion right."  (D.I. 82 at 13-14).  Third, Plaintiff argues that use of the *Kessler* doctrine would wrongfully perpetuate the obsolete legal doctrine of pre-*Therasense* inequitable conduct law.  (*Id.* at 14-15).

The *Kessler* doctrine "fills the gap left by claim and issue preclusion."  *PersonalWeb*, 961 F.3d at 1376.  The "gap" exists because "claim preclusion cannot apply to acts of alleged infringement that occur after the final judgment in the earlier suit," and, "if the requirements of issue preclusion are not satisfied, relief under that doctrine will not be available to protect post-judgment activity."  *Id*.  *PersonalWeb* made clear that the *Kessler* doctrine applies more broadly than just to cases where the issue of non-infringement was "actually litigated."  *PersonalWeb* held that it applied to cases where the earlier judgment was a dismissal with prejudice.  *Id.* at 1379.  GE I was dismissed with prejudice.  Thus, *PersonalWeb* is controlling here.  The *Kessler* doctrine applies to bar Plaintiff from bringing this action after the prior dismissal.  Plaintiff's arguments as to a change in law exception, as exists in issue preclusion, are unavailing.  The *Kessler* doctrine is a "close relative to claim preclusion, without its temporal limitation, rather

than as an early version of non-mutual collateral estoppel."[6]  *Id.* at 1377.  Therefore, as with

claim preclusion, the change in law exception does not apply under the *Kessler* doctrine.  *See,*

*e.g.*, *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380 (Fed. Cir. 2008) (affirming

district court ruling "that there is no 'change of law' or fairness exception to prevent application

of claim preclusion") (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981));

*Barzin v. Selective Serv. Local Bd. No. 14*, 446 F.2d 1382, 1383 (3d Cir. 1971) (holding that "a

prior decision may serve as res judicata even if a contrary judicial decision on the legal issues

involved intervenes between the first and second suits"); *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 525

F. Supp. 2d 680, 690 (D. Del. 2007) ("[A] change in the law is insufficient to bar the application

of res judicata.").

     Although Plaintiff attempts to characterize this as a windfall for GE or that the *Kessler*

doctrine should not apply because it would not be equitable, GE I was dismissed as a result of

the law at the time, and Plaintiff is still free to assert its patents against a party that was not a

previous successful litigant on the same claims.

     I find Plaintiff's attempt to analogize the post-judgment change in law here to the post-

judgment change in circumstance in *Mentor Graphics* unpersuasive.  In *Mentor Graphics*, the

parties settled the litigation (that is, entered into a contract) with defendant taking a license and

plaintiff dismissing its claims with prejudice.  The license agreement later terminated.  *Mentor*

*Graphics*, 851 F.3d at 1297-98.  Claim preclusion did not apply because the new lawsuit alleged

infringement subsequent to the termination of the license agreement.  *Id*. at 1298-1301. The

Federal Circuit also briefly addressed the *Kessler* doctrine, holding that it did not apply.  *Id*. at

---

[6] While I expect that anybody reading this opinion knows this, I need to state that "res judicata"
is now called "claim preclusion," and "collateral estoppel" is now called "issue preclusion."

1301.  Due to the defendant taking a license as part of the settlement, it was not an "adjudged non-infringer."  It had not "defeated those [infringement] contentions" in the first lawsuit.  Here, GE did defeat the first lawsuit, and the dismissal with prejudice makes it an adjudged non-infringer.  *Mentor Graphics* is of no help to Plaintiff.  The case's resolution flowed from the prior case being settled; there is nothing analogous here.

Plaintiff's arguments based on equity fall short.  I note in *Kessler* the Supreme Court's emphasis on the nature of the final judgment at issue there.  "[T]here was final judgment for Kessler.  This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as [the patentee], by virtue of his ownership of the [asserted] patent, was concerned, that Kessler had the right to manufacture, use, and sell [the patented article]."  *Kessler*, 206 U.S. at 288.  There is nothing inequitable about applying the *Kessler* doctrine in these lawsuits.

Plaintiff has one final argument.  It argues that the *Kessler* doctrine does not apply because GE has not met its burden of proof that the products-at-issue in this case are "essentially the same" as the products accused in the prior litigation.  (*Id.* at 15; Tr. 36:25-37:9).  To demonstrate that the products-at-issue in this case are "essentially the same" as the products accused in prior litigations, GE points to the fact that Plaintiff used its earlier 2006 complaint in GE I to provide actual notice to GE under 35 U.S.C. § 287.  (D.I. 84 at 6).  Plaintiff contends that the standard for providing notice under 35 U.S.C. § 287 differs from the standard for *Kessler* preclusion, which requires that the products in the second suit be structurally "essentially the same" as those in the prior litigation.  (D.I. 82 at 16).  Plaintiff asserts that it "is not necessary for two products to be 'essentially the same' for notice of infringement for one to apply as notice of infringement for the other" because notice may apply to a group of products regardless of their

9

similarity to one another. (*Id.*). To the extent Defendant argues the accused products from GE I and the instant case are essentially the same, Plaintiff points out that it sought discovery on any electrical circuitry design changes over time for any CFL[7] model, but Defendant objected to the discovery. (*Id.* at 15-16).

Although no party was able to point to a case in which the scope of actual notice under 35 U.S.C. § 287 was compared with the scope of "essentially the same" under the *Kessler* doctrine, some case law on notice is instructive. To serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001). The letter must communicate a charge of infringement of specific patents by a specific product or group of products. *Amsted Industries Inc. v. Buckeye Steel Castings Co*., 24 F.3d 178, 187 (Fed. Cir. 1994). Plaintiff focuses on "group of products" to advocate that notice may apply across a range of products regardless of their level of similarity to one another. (D.I. 82 at 16). I do not agree. The Federal Circuit found notice from an earlier suit provided actual notice "as to all products [that were] the same or substantially similar." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *see also K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (finding notice was adequate for a new design where defendant "made only a trivial change" from the old design and "maintained the same product numbers"). Plaintiff may be correct that notice at the outset of litigation may apply to other products later identified in discovery, but I think Plaintiff is misreading *Funai* if it is interpreting that to mean that actual notice can extend beyond "the same or substantially similar" products. When the Court in *Funai* stated that "ensuing discovery of other models and related products may bring those products within the

---

[7] CFL is what the parties call the accused compact fluorescent lamps.

scope of the notice," *Funai*, 616 F.3d at 1373, all I think the Court meant was that a product discovered for the first time after suit was filed could be "the same or substantially similar."  I do not think the Court meant that actual notice as to one product sufficed for dissimilar products.

I think the caselaw indicates the actual notice standard for marking is aligned with the "essentially the same" standard of the *Kessler* doctrine.  Thus, because of the different burdens of proof, Plaintiff faces the classic "Heads, I win; Tails, you lose" situation.  Suit against any products that are essentially the same are barred by the *Kessler* doctrine.  If there are any accused products that are not essentially the same, Plaintiff's reliance on GE I has provided no "actual notice," and Plaintiff's damages are zero.

Plaintiff's discovery argument is irrelevant.  Plaintiff did not submit a Rule 56(d) declaration to support its request for more discovery, and it never asserted additional discovery was needed when stipulating to early summary judgment briefing.  (D.I. 84 at 8-9).  Plaintiff concedes that it did not do anything to compel discovery, while taking the position that it did not need to do so because the burden of "essentially the same" is on GE.  (Tr. 48:6-22).  That may be true, but in taking such a position, Plaintiff cannot support its lack of discovery argument.

Thus, I will grant summary judgment for GE regarding the *Kessler* doctrine on all products that are the "same or essentially the same" as the ones asserted in GE I.  I do not think GE has proffered any evidence from which I can identify which current products those are.  It may be all of them.  The description in GE I was all CFLs,[8] and the description now is all CFLs. But I am not convinced that identity is sufficient to say that GE has shown that I should grant summary judgment for all its CFLs.  For any products that are not "the same or substantially

---

[8] I do not express any opinion on whether the description in GE I sufficed to give any actual notice of what the accused products were.

similar," then GE I did not give actual notice, and there will be no resulting damages under 35

U.S.C. § 287.  I do not think there will be any products that do not fall into one of those two

categories.  GE's motion regarding the *Kessler* doctrine is GRANTED-in-part.[9]  While GE has a

summary judgment motion pending relating to marking, it raises different issues, which I address

later in this opinion.

### 2.  '681 and '680 Patents Asserted against Osram

Plaintiff's predecessor-in-interest previously asserted the '681 and '680 patents against

Osram in OSRAM I.  Plaintiff alleges in its complaint that "every CFL sold by Defendants

during the relevant time periods" infringes the patents-in-suit.  (D.I. 1 ¶ 30).  In OSRAM I, the

'681 and '680 patents were held unenforceable due to inequitable conduct.  *Nilssen*, 440 F. Supp.

2d at 911.

Much like GE, Osram argues the *Kessler* doctrine should apply to bar Plaintiff's post

OSRAM I infringement allegations as to the '681 and '680 patents.  (D.I. 72 at 2).  Plaintiff

makes many of the same arguments against the use of the *Kessler* doctrine for Osram as it did for

GE, including equity, a change in law, and perpetuating obsolete legal doctrine regarding

inequitable conduct.  For the same reasons I found these arguments unavailing against GE, I

again find them unavailing against Osram.

Plaintiff makes an additional argument against the use of the *Kessler* doctrine as it applies

to Osram—that *Kessler* has never barred a suit on grounds of a prior unenforceability

determination and that decisions discussing application of the doctrine to judgments of invalidity

only did so in dicta.  (D.I. 74 at 13, 16-17).  In *Rubber Tire Wheel Co. v. Goodyear Tire &*

*Rubber Co.*, 232 U.S. 413, 419 (1914), the Supreme Court recognized that an accused infringer,

---

[9] I will enter a separate order about how to proceed from this ruling.

having previously prevailed on the basis of invalidity, "by reason of the final adjudication in its

favor—was entitled to make and sell the [patented tire], and to have those who bought that [tire]

from it unmolested in taking title and in enjoying the rights of ownership."[10]   *PersonalWeb* states

that the *Kessler* doctrine "extends to protect any products as to which the manufacturer

established a right not to be sued for infringement" and makes clear that the *Kessler* doctrine

applies to a prior dismissal with prejudice.  *PersonalWeb*, 961 F.3d at 1379.

The Federal Circuit has acknowledged that *Kessler* applies to invalidity judgments.  *See,*

*e.g.*, *SpeedTrack,* 791 F.3d at 1323 ("The *Kessler* doctrine 'bars a patent infringement action

against a customer of a seller who has previously prevailed against the patentee because of

invalidity or noninfringement of the patent.'") (citation omitted); *MGA, Inc. v. Gen. Motors*

*Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The *Kessler* doctrine bars a patent infringement

action against a customer of a seller who has previously prevailed against the patentee because of

invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be

virtually destroyed.").  As *Kessler* applies to invalidity judgments and to prior dismissals with

prejudice, I find the *Kessler* doctrine applies to a prior unenforceability determination.

Plaintiff argues that Osram failed to meet its burden to prove the at-issue products are

"essentially the same" as the products in OSRAM I.  As with GE, Plaintiff relies on the OSRAM

I complaint as actual notice under 35 U.S.C. § 287.  While much of the argument and reasoning

here is the same as GE (*see supra* 9-11), Osram has some evidence about the lack of differences

between the OSRAM I products and currently-accused products.  Osram points to an

---

[10] While the Supreme Court ultimately held that the suit against the manufacturer's customers
could proceed due to modifications the customers had made to the accused tires, if the *Kessler*
doctrine did not apply to invalidity judgments at all, the Court would not have needed to reach
the modification issue.

interrogatory that asked Plaintiff to identify any differences between the two sets of products "related to the limitations in the asserted claims." (D.I. 72 at 14). Plaintiff responded, "CFLT does not believe that the products accused of infringement in the Previous Litigations operate in a manner that is materially different from the way in which the products accused of infringement in this case operate." (D.I. 73-6 Ex. 6). Thus, Osram has an admission that Plaintiff cannot identify any material differences. Plaintiff now attempts to be cute, saying in effect that its answer avoided the question. Plaintiff says it referred to how the products "operate," which according to Plaintiff is how a product functions, and not how it is structured, about which Plaintiff claims it made no representation. (D.I. 74 at 18). When pressed further on this doubletalk, Plaintiff repeated its argument as to a lack of discovery. (Tr. 47:10-48:22). As in the GE case, having made a strategic decision not to submit a Rule 56(d) declaration to support its request for more discovery, Plaintiff now cannot support a lack of discovery argument. Against Osram, in discovery, Plaintiff did not identify any differences between the at-issue products and the products from OSRAM I. The relevant complaints describe the accused products as the same thing: CFLs. Plaintiff's failure to identify any differences between two sets of the same-named products is sufficient evidence to show that there are no differences. As such, I find that the products are "essentially the same" to support applying the *Kessler* doctrine. Osram's summary judgment motion as to the '681 and '680 patents is GRANTED.

### 3.     '140 and '464 Patents Asserted against Osram

The complaint in OSRAM II alleged infringement of sixteen patents, including the '140 and '464 patents. (D.I. 74-4 Ex. 5 ¶ 14). After receiving Osram's September 8, 2003 invalidity contentions in OSRAM I, Nilssen withdrew fourteen of the sixteen patents-in-suit, including the '140 and '464 patents. (D.I. 74-6 Ex. 7 at 4). Over the latter half of 2005, Nilssen separately

14

withdrew the two remaining patents-in-suit. (D.I. 74-10 Ex.11 at 2; D.I. 74-11 Ex. 12).  One

week after Nilssen advised the court that he had withdrawn the final patent, the Court issued an

order that the "case is dismissed." (D.I. 74-12 Ex. 13).

      In determining whether the *Kessler* doctrine applies, the parties debate whether the '140

and '464 patents were subject to a dismissal with prejudice.  As part of this inquiry, the parties

initially debate whether OSRAM II was dismissed with prejudice.  The initial dismissal is silent

as to whether the dismissal was with or without prejudice.  (*Id.*).  Plaintiff argues that because of

this silence, the dismissal was without prejudice.  (D.I. 74 at 1-2, 11).  In an order on a bill of

costs, the court referred to the dismissal of the remaining patents in the case as a dismissal with

prejudice, stating, "On September 27, 2005, the Court dismissed with prejudice the case."  (D.I.

73-5 Ex. 5 at 1).  Although Plaintiff characterizes this as unappealable dictum (D.I. 74 at 12), at

the hearing Plaintiff conceded that one possible inference is that the parties and the Court

understood that the case was dismissed with prejudice.  (Tr. 39:12-20, 40:3-11).

      The critical issue for application of the *Kessler* doctrine is whether the previously

withdrawn '140 and '464 patents were subject to the remainder of the case's dismissal with

prejudice.  The '140 and '464 patents were "dropped" four months after OSRAM II was filed by

their lack of inclusion in Plaintiff's September 25, 2003 infringement contentions.  (Tr. 41:10-

20).  The record in OSRAM II is unclear if or when the Northern District of Illinois Court was

informed about the dropping of the '140 and '464 patents.  The only information put forth by the

parties as to the Court's awareness of the '140 and '464 patents' withdrawal is: (1) Plaintiff's

submission to that court in 2005 of a revision to the parties' prior joint claim construction chart,

in which Plaintiff stated there were only two remaining patents-in-suit as of November 19, 2003

and Plaintiff had since withdrawn one of them (D.I. 74-10 Ex. 11 at 1-2; *see* D.I. 82-1 (*Nilssen v.*

*Osram Sylvania, Inc*., No. 03 C 2962 (D.I. 20))); and (2) a letter from Plaintiff to the Northern District of Illinois Court withdrawing the sole remaining patent. (D.I. 74-11 Ex. 12).  The letter referenced preparing a "joint dismissal of this action" and Plaintiffs' intent "to submit to Osram an appropriate statement of non-liability."  (*Id*.).

Plaintiff's position is that the '140 and '464 patents were withdrawn before any substantive filings on the merits on any patent and the OSRAM II court never entered a separate order dismissing those patents.  Plaintiff asserts the Federal Circuit treats such a withdrawal of patents "as being akin to either a [Rule] 15 amendment to the complaint … or a Rule 41(a) voluntary dismissal of claims without prejudice. *SanDisk Corp. v. Kingston Tech. Co*., 695 F.3d 1348, 1353 (Fed. Cir. 2012)."  (D.I. 74 at 11).  Osram's position is that because the OSRAM II court characterized the dismissal of the case as "with prejudice," the "with prejudice" should apply to the previously withdrawn patents.  (D.I. 72 at 18-19; D.I. 76 at 7-8).  Osram argues that Plaintiff's predecessor-in-interest never reserved his rights as to a dismissal without prejudice and never disputed the OSRAM II court's description of the case being dismissed "with prejudice."  Further, Plaintiff's counsel in this case previously agreed (before the decision in *PersonalWeb*) both orally and in writing to the description that the two patents had been dismissed with prejudice.  (D.I. 72 at 19).

At the oral argument, Osram pointed to three unpublished decisions from three different district courts wherein two of those courts "suggested that in order to encourage parties to thin out their claims, the court would allow claims and patents to be dismissed without prejudice during the earlier stages of the case."  (Tr. 13:9-25).  Even the most beneficial case to Osram's position, as stated by Osram, only brought up the potential of a possible preclusion problem.  (Tr. 14:1-14).  Osram admits the record as to how the '140 and '464 patents were dismissed from the

case is "a little bit muddy" and the law on whether patents withdrawn early from a case are

dismissed with or without prejudice "is not entirely clear." (Tr. 7:23-25 & 23:2-5). I do not

think Osram has not met its burden of proof that the '140 and '464 patents were subject to a

dismissal with prejudice. Therefore, the *Kessler* doctrine cannot be applied to bar Plaintiff's

infringement allegations as to the '140 and '464 patents.

Osram's motion for summary judgment as to the '140 and '464 patents is DENIED.

## B.      Marking Pursuant to 35 U.S.C. § 287(a)

The Marking Statute limits past damages when a patentee or its licensees fail to properly

mark patented articles as patented. It states:

> In the event of failure so to mark, no damages shall be recovered by the patentee in
> any action for infringement, except on proof that the infringer was notified of the
> infringement and continued to infringe thereafter, in which event damages may be
> recovered only for infringement occurring after such notice. Filing of an action for
> infringement shall constitute such notice.

35 U.S.C. § 287(a). The Marking Statute exists for the sole benefit of the public and protects

against innocent infringement. As the Federal Circuit explained in *Nike, Inc. v. Wal-Mart Stores,*

*Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998), "The marking statute serves three related purposes:

(1) helping to avoid innocent infringement; (2) encouraging patentees to give notice to the public

that the article is patented; and (3) aiding the public to identify whether an article is patented."

The Marking Statute requires that a patentee that makes, sells, or licenses the patented article

"cannot recover damages against infringers of the patent, unless he has given notice of his right,

either to the whole public, by marking his article 'Patented,' or to the particular defendants, by

informing them of his patent, and of their infringement of it." *Dunlap v. Schofield*, 152 U.S. 244,

247-48 (1894). The notice required of the patentee is "an affirmative fact, and is something to be

done by [the patentee]." *Coupe v. Royer*, 155 U.S. 565 (1895).

While notice is an affirmative act on the part of the patentee, the defendant's knowledge of a patent and its infringement of that patent is irrelevant. "The marking statute imposes notice obligations on the patentee, and only the patentee is capable of discharging those obligations. It is not directed to the infringer and does not contemplate mere knowledge of the infringer as sufficient to discharge the notice requirements placed on the patentee." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc*., 950 F.3d 860, 866 (Fed. Cir.), *cert. dismissed*, 141 S. Ct. 753 (2020).

It is undisputed that licensees of the '681 and '680 patents sold unmarked products.  (D.I. 63 at 6; D.I. 65 at 4).  Therefore, the only way Plaintiff would be able to recover any damages would be if its predecessor-in-interest's 2006 Complaint in GE I put GE on actual notice of infringement of the '681 and '680 patents.  (*Id.*).

GE argues that either no notice was given, or if notice is found to have been given, that it was withdrawn.  (D.I. 63 at 2).  GE's first argument is that the 2006 GE I Complaint cannot provide actual notice because it merely served as a placeholding reservation of rights to sue at a later time if the '681 and '680 patents were to become enforceable again, rather than an actual complaint alleging infringement.  (D.I. 63 at 9; Tr. 59:15-60:4).  GE goes on to argue that because the '681 and '680 patents were unenforceable at the time of the 2006 Complaint in GE I, "the 2006 Complaint did not and could not state a claim for infringement" of the '681 and '680 patents.  (D.I. 63 at 10).  GE contends "that notice provided during a period in which liability could not accrue does not constitute valid notice under Section 287(a)."  (*Id.* at 11).  GE's second argument is that even if notice were given, the notice would have been revoked by Plaintiff's predecessor-in-interest's voluntary dismissal of the complaint with prejudice and its statement to the Court at the time of the dismissal that the '681 and '680 patents would not be asserted.  (*Id.* at

13).

Plaintiff argues that the plain and unambiguous language of the Marking Statute states, "Filing of an action for infringement shall constitute [actual] notice." 35 U.S.C. § 287(a). (D.I. 65 at 2). Plaintiff contends that nothing in the Marking Statute limits the notice that flows from the filing of an action. Since the statute contains no limitation, it follows that it does not matter for the effect of the Marking Statute if the action is ultimately unsuccessful, the patents are declared unenforceable, the patentee voluntarily dismisses the action with prejudice, or the patentee represents that the patents will no longer be asserted. (*Id.* at 1-2).

I agree with Plaintiff that the Marking Statute is clear; either an action for infringement was filed or it was not. There is no statutory language along the lines of "filing, unless x, constitutes notice." Thus, the filing of a suit constitutes notice. It may be the case that filing a placeholder action for infringement, stating the patents are unenforceable, and immediately moving for a stay does nothing to advance the purposes of the Marking Statute. But that is all irrelevant in the face of the clear statutory language. (And, of course, just because "lack of notice" is not available as an argument does not mean that the patentee's conduct could not conceivably give rise to other doctrines that would bar the recovery of any damages.).

GE cites cases to support its position that a defendant is not on notice of infringement if there are no valid or enforceable claims to infringe at the time of the purported filing of a patent infringement action. *Livjo, Inc. v. Deckers Outdoor Corp.*, 2011 WL 12516430, at *5 (C.D. Cal. Sept. 27, 2011); *Civix-DDI v. Cellco P'ship*, 387 F. Supp. 2d 869, 900 (N.D. Ill. 2005). (D.I. 63 at 8-9; D.I. 66 at 5-6). However, in these cases the asserted patents hadn't issued yet, so the plaintiff was not yet a patentee under § 287(a). Here, Plaintiff's predecessor-in-interest was a patentee when it put GE on notice. GE's argument that notice cannot be valid during a period in

which liability could not accrue is also ineffective.  GE admits that had the Federal Circuit

reversed the inequitable conduct findings in OSRAM I, the patentee would have been able to

accrue damages through the notice provided by the GE I Complaint.  (Tr. 70:9-16).

As GE has acknowledged, notice and scienter as to the enforceability of the at-issue

patents are two different issues.  (D.I. 63 at 8; Tr. 65:16-21).  GE's knowledge that the '681 and

'680 patents were unenforceable does not undo, under the language of the § 287(a), the notice

provided by the GE I Complaint.  *Amsted*, 24 F.3d at 187 ("It is irrelevant, contrary to the district

court's conclusion, whether the defendant knew of the patent or knew of his own infringement.

The correct approach to determining notice under section 287 must focus on the action of the

patentee, not the knowledge or understanding of the infringer.")  Therefore, GE's knowledge as

to the status of the '681 and '680 patents as unenforceable is irrelevant to its having been placed

on actual notice through Plaintiff's filing the GE I Complaint alleging infringement.

The result here may make little sense on the facts of this case.  GE hypothesizes more

absurd results—a  potential patent owner could file but not serve a complaint, dismiss the

complaint, wait for years of damages to accrue, and then refile the complaint and claim damages

from the date of the earlier filed, but never served, complaint.  (D.I. 66 at 8; Tr. 71: 1-18).  While

this scenario, which is far-fetched, would not make much sense if it were to happen, it is not the

scenario before the Court. Thus, even if the literal interpretation of § 287(a) would support such

a result, I do not think that means I can just ignore the clear statutory language.[11]

I reject the argument that notice was withdrawn or revoked.  No party points to a case in

---

[11]  It is pretty difficult to overcome the literal language of a statute by making an argument that
Congress would not have intended such a result.  *See Encompass Ins. Co. v. Stone Mansion
Restaurant Inc*., 902 F.3d 147, 152-54 (3d Cir. 2018) ("bright-line rule" upheld even though
result was "peculiar").

which actual notice has been withdrawn.[12]  As § 287(a) does not speak to how or when notice can be withdrawn, I cannot conclude that a voluntary dismissal with prejudice acts a revocation of actual notice.  Therefore, I am denying GE's motion for summary judgment regarding marking pursuant to 35 U.S.C. § 287(a).  GE's marking motion is DENIED.

## IV.  CONCLUSION

For these reasons, I will grant-in-part GE's motion for summary judgment regarding the *Kessler* doctrine, grant Osram's motion for summary judgment regarding the *Kessler* doctrine for the '681 and '680 patents, deny Osram's motion for summary judgment regarding the *Kessler* doctrine for the '140 and '464 patents, and deny GE's motion for summary judgment regarding marking pursuant to 35 U.S.C. § 287(a).

Appropriate orders will follow.

---

[12] I imagine that if the patentee issued a sworn statement to the defendant stating, I withdraw all notice, defendant might have a decent equitable defense—maybe estoppel or the like—if later sued.